QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Tigran Guledjian (Bar No. 207613)
  tigranguledjian@quinnemanuel.com
  Christopher A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendants
Cribl, Inc. and Clint Sharp

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SPLUNK INC., | Case No. 22-cv-07611-WHA |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| CRIBL, INC., et al., | Date:    March 23, 2023 |
| Defendants. | Time:    8:00 A.M. |
| | Crtrm.:    12 |
| | Judge:    Honorable William H. Alsup |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE THAT on March 23, 2023 at 8:00 a.m., in Courtroom 12 of the United States District Court for the Northern District of California, San Francisco Division, 50 Golden Gate Avenue, San Francisco, CA 94102, defendants Cribl, Inc. and Clint Sharp will move this Court for an order dismissing Counts I-V, parts of Count VI, and Count IX of the Complaint (ECF No. 1) filed by Splunk Inc.

This motion is made pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and is based upon the following Memorandum of Points and Authorities; the filings in this action; and any such additional material or argument as may be submitted to the Court before its decision.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order dismissing Counts I-VI and IX of the Complaint with prejudice for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Splunk's claims for willful and indirect infringement of the Asserted Patents should be dismissed because the Complaint fails to plead (i) knowledge of the patents, (ii) knowledge of infringement, (iii) specific intent, or (iv) substantial non-infringing uses.

2.      Whether Splunk's claims for infringement of the Asserted Patents should be dismissed because the claims of the Asserted Patents are ineligible under 35 U.S.C. § 101.

3.      Whether Splunk's claims for contributory and induced copyright infringement should be dismissed because the Complaint fails to plead the required knowledge and intent.

4.      Whether Splunk's claims for violation of 17 U.S.C. § 1202 should be dismissed because the Complaint fails to describe the alleged copyright management information and alterations with adequate specificity and does not sufficiently plead the required intent.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.   Splunk's Willfulness and Indirect Infringement Claims Should be
     Dismissed .....................................................................................................1

     A.   Splunk Fails Plausibly to Plead that Cribl Knew of the Asserted
          Patents ................................................................................................1

     B.   Splunk Does Not Properly Plead That Cribl Knew of Infringement ............2

     C.   Splunk Fails Sufficiently to Allege the Requisite Specific Intent.................3

     D.   Splunk Inadequately Pleads the Lack of Substantial Non-Infringing
          Uses ....................................................................................................4

II.  Section 101 Requires Dismissal of Splunk's Patent Claims .......................5

     A.   The '206 Patent Claims are Invalid under Section 101 ................................6

     B.   The '443 Patent Claims are Invalid under Section 101 ..............................10

     C.   The '438 Patent Claims are Invalid under Section 101 ..............................14

     D.   The '312 Patent Claims are Invalid under Section 101 ..............................17

     E.   The '467 Patent Claims are Invalid under Section 101 ..............................21

III. Splunk's Indirect Copyright Infringement Claims Should Be Dismissed ..............24

IV.  Splunk's DMCA Claim Against Mr. Sharp Should Be Dismissed.........................24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>Cases</u>

4

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ....................................................................... 21

5

6

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ......................................................................... 8

7

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ....................................................................... 20

8

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
No. 19-cv-05903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020),
*aff'd*, 853 F. App'x 669 (Fed. Cir. 2021) ......................................................... 5

9

10

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................................................................. *passim*

11

12

*Appistry, Inc. v. Amazon.com, Inc.*,
195 F. Supp. 3d 1176 (W.D. Wash. 2016), *aff'd*, 676 F. App'x 1008 (Fed. Cir. 2017) ............ 15

13

*Apple v. Princeps*,
Case No. 19-cv-06352-EMC, 2020 WL 1478350 (N.D. Cal. Mar. 26, 2020) ......................... 5

14

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ........................................................................... 6

15

16

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, No. 18-415 (U.S. Jan. 13, 2020)....................... 6

17

*BlackBerry Ltd. v. Facebook, Inc.*,
487 F. Supp. 3d 870 (C.D. Cal. 2019), *aff'd*, 831 F. App'x 502 (Fed. Cir. 2020) ...................... 9

18

19

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ............................................................. 10, 19, 20

20

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ......................................................................... 9

21

22

*California Beach Co., LLC v. Exqline Inc.*,
No. C 20-01994 WHA, 2020 WL 6544457 (N.D. Cal. Nov. 7, 2020) ......................................... 2

23

*CAP Co., Ltd. v. McAfee Inc.*,
No. 14–cv–05068–JD, 2015 WL 3945875 (N.D. Cal. June 26, 2015) ...................................... 4

24

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed Cir. 2019) ........................................................................... 5

25

26

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
813 F. App'x 495 (Fed. Cir. 2020) .................................................................... 13

27

*Coho Licensing LLC v. Glam Media, Inc.*,
No. C 14-01576 JSW, 2017 WL 6210882 (N.D. Cal. Jan. 23, 2017), *aff'd*, 710 F.
App'x 892 (Fed. Cir. 2018) .............................................................................. 16

28

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................. 20

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) .................................................................................... 7

*Davis v. Pinterest, Inc.,*
   No. 19-CV-07650-HSG, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ........................ 25

*Delphix Corp. v. Actifo, Inc.,*
   No. C 13–4613 RS 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ....................... 2, 24

*Device Enhancement LLC v. Amazon.com, Inc.,*
   189 F. Supp. 3d 392 (D. Del. 2016) ..................................................................... 15, 16

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293 (Fed. Cir. 2006) .................................................................................... 3

*Elec. Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................ 8, 10, 12, 13, 22

*Epikhin v. Game Insight N. Am.,*
   No. 14-cv-04383-LHK, 2015 WL 2412357 (N.D. Cal. 2015) .................................... 24

*Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.,*
   955 F.3d 1317 (Fed. Cir. 2020) .................................................................................... 7

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.,*
   137 F. Supp. 3d 1157 (N.D. Cal. 2015), *aff'd*, 677 F. App'x. 679 (Fed. Cir. 2017) ................. 10

*Finjan v. Juniper,*
   No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb, 14, 2018) ..................... 2, 3

*Fluidigm Corp. v. IONpath, Inc.,*
   No. C 19-05639 WHA 2020 WL 408988 (N.D. Cal. Jan. 24, 2020) .............. 1, 3, 4, 5

*Free Speech Systems, LLC v. Menzel,*
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..................................................................... 25

*Free Stream Media Corp. v. Alphonso Inc.,*
   996 F.3d 1355 (Fed. Cir. 2021) ............................................................................ 12, 13

*Global-Tech Appliances, Inc. v. SEB S.A.,*
   563 U.S. 754 (2011) ...................................................................................................... 1

*Hypermedia Navigation LLC v. Google LLC,*
   No. 18-cv-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ......................... 4

*In re Bill of Lading Transmission,*
   681 F.3d 1323 (Fed. Cir. 2012) .................................................................................... 3

*In re TLI Commc'ns LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016) .................................................................................... 13

*Intellectual Ventures I LLC v. Capital One Financial Corp. (Capital One Financial),*
   850 F.3d 1332 (Fed. Cir. 2017) .................................................................. 6, 9, 20, 23

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) .................................................................. 5, 6, 8, 14, 15, 18

*Intellectual Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017) ................................................................................. 22

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) .................................................................................. 12, 19

*Kilina Am., Inc. v. SA & PW, Inc*,
   No. CV-19-03786-CJC-KSX, 2019 WL 8685066 (C.D. Cal. Aug. 27, 2019) ........................ 24

*Logan v. Meta Platforms, Inc.*,
   No. 22-CV-01847-CRB, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ............................... 25

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ........................................................................................ 24

*MasterObjects, Inc. v. Amazon.com, Inc.*,
   No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ............................... 1, 2, 3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ........................................................................................... 7, 10, 20

*Move, Inc. v. Real Estate All. Ltd.*,
   721 Fed. App'x. 950 (Fed. Cir. 2018) .......................................................................... 14, 20

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-CV-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ...................................... 12

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
   193 F. Supp. 3d 1069 (N.D. Cal. 2016), *aff'd*, 684 F. App'x. 971 (Fed. Cir. 2017).............. 7, 8

*Parker v. Flook*,
   437 U.S. 584 (1978) .......................................................................................................... 7

*People.ai, Inc. v. SetSail Techs., Inc.*,
   575 F. Supp. 3d 1193 (N.D. Cal. 2021) ................................................................ 7, 19, 22, 23

*People.ai, Inc. v. SetSail Techs., Inc.*,
   No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021) ................................... 2, 3

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................................................... 24

*Procter & Gamble Co. v. QuantifiCare Inc.*,
   288 F. Supp. 3d 1002 (N.D. Cal. 2018) ............................................................................. 19

*Purepredictive, Inc. v. H2O.AI, Inc.*,
   No. 17-cv-03049-WHO, 2017 WL 3721480 (N.D. Cal. Aug. 29, 2017)..................................... 7

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) .............................................................................. 10, 12, 18

*Return Mail, Inc. v. U.S. Postal Serv.*,
   868 F.3d 1350 (Fed. Cir. 2017), *reversed and remanded on other grounds*,
   139 S. Ct. 1853 (2019) ...................................................................................................... 6

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................. 9, 10, 16

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2000 (2018) ................................. 14, 20

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
    804 F. App'x 668 (9th Cir. 2020) ................................................................. 25

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017) ................................................................. 23

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) ....................................................... 1, 2, 4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138, 1152 (Fed. Cir. 2016) ............................................................. 7

*Takeda Pharms. v. West-Ward Pharm.*,
    785 F.3d 625 (Fed. Cir. 2015) ................................................................. 4

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) ........................................................ 8, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................. *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................................. 6

*Uniloc USA, Inc. v. Apple Inc.*,
    No. C 18-00359 WHA, 2018 WL 2047553 (N.D. Cal. May 2, 2018) .......................... 2, 3, 4, 5

*VeriPath, Inc. v. Didomi*,
    842 F. App'x 640 (Fed. Cir. 2021) ................................................................. 13

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    411 F. Supp. 3d 926 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) .......... 11, 12, 22

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) ................................................................. 13, 14

**Statutory Authorities**

17 U.S.C. § 1202 ................................................................................... 24, 25

35 U.S.C. § 101 ................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Splunk's Willfulness and Indirect Infringement Claims Should be Dismissed**

**A.      Splunk Fails Plausibly to Plead that Cribl Knew of the Asserted Patents**

Splunk's willful and indirect infringement claims should be dismissed because Splunk has not pled pre-suit knowledge of the Asserted Patents.[1] *See Sonos, Inc. v Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) ("Like willful infringement, both forms of indirect infringement — induced and contributory infringement — require knowledge of the patent and knowledge of infringement"); *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020) (plausible allegation of pre-suit willful infringement requires pre-suit knowledge of the patents). Splunk alleges "Cribl has been aware of the Patents-in-Suit, or, at a minimum, willfully blind to their existence, since the [sic] approximately the issue date of those patents or the founding of Cribl, whichever is later."[2] Compl. ¶115. Splunk fails to allege it sent Cribl a notice letter, much less that anyone at Cribl was personally aware of the Asserted Patents. Rather, it merely implies Cribl somehow gained knowledge of the Asserted Patents because Cribl's co-founders and some employees formerly participated in Splunk's patent program, even though none is a named inventor of any of the five Asserted Patents. Compl. ¶¶8, 90-92. That is insufficient to plausibly allege knowledge.

Splunk attempts to circumvent the knowledge requirement by alleging "on information and belief, all Cribl employees who formerly worked for Splunk are well aware of Splunk's extensive patent portfolio." Compl. ¶93. Mere general knowledge of a patentee's portfolio does not plausibly allege actual notice of a particular patent. *See, e.g.*, *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C

---

[1]  The five Asserted Patents—U.S. Patent Nos. 9,208,206 ('206 Patent), 9,762,443 ('443 Patent), 10,805,438 ('438 Patent), 10,255,312 ('312 Patent), and 9,838,467 ('467 Patent)—are generally directed to aspects of capturing, analyzing, and displaying prior art sources of data.

[2]  Splunk has also failed to plead facts raising a plausible inference that Cribl was willfully blind to the Asserted Patents (or their infringement) because it does not allege Cribl took any "deliberate actions to avoid confirming a high probability of wrongdoing" or "can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *see Fluidigm*, 2020 WL 408988, at *4 ("[T]he complaint's allegations that defendant 'knew and/or was willfully blind to the fact that it was inducing others, including customers…to infringe…' is a legal conclusion to be drawn after alleging supporting facts and is ignored.").

20-08103 WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) ("Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent."); *Finjan v Juniper*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb, 14, 2018) (finding the complaint deficient where it "merely assert[ed] in conclusory terms" awareness of plaintiff's patent portfolio, but contained "no *factual* allegations that [defendant] had actual *pre-suit knowledge* of the eight patents-in-suit.") (emphasis in original).  Splunk's own repeated use of "on information and belief" "undermines [its] argument that the facts it has pleaded are sufficient to support a plausible inference of pre-suit knowledge." *Delphix Corp. v. Actifo, Inc*., No. C 13-4613-RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014); Compl. ¶¶5, 118.

### B.     Splunk Does Not Properly Plead That Cribl Knew of Infringement

Splunk's willful and indirect infringement claims should be dismissed for the independent reason that Splunk fails plausibly to plead Cribl had pre-suit knowledge of infringement. *See MasterObject*s, 2021 WL 4685306, at *6 (failure to adequately plead defendant's knowledge of infringement dooms pre-suit willfulness claims); *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL 2047553, at *5 (N.D. Cal. May 2, 2018) (induced and contributory infringement requires "knowledge of the patent in suit and knowledge of patent infringement."); *California Beach Co. v. Exqline Inc.*, No. C 20-01994 WHA, 2020 WL 6544457, at *1 (N.D. Cal. Nov. 7, 2020) (claim for inducement requires plaintiff plausibly plead "the defendant knew of the patent, acted to induce another, knew the conduct it induced constituted direct infringement, and intended that result."). As this Court has explained, "it is not plausible that every manufacturer, in the absence of a notice letter, would be aware of each and every patent that might claim some feature of its products. Willful infringement is the exception, not the rule." *Sonos,* 591 F. Supp. 3d at 644. Similarly, Splunk implausibly implies, without any specific factual allegations, that Cribl has analyzed Splunk's 1000+ patent portfolio to determine that Cribl's products infringe unspecified claims of the five Asserted Patents.

The Complaint additionally fails to plead that Cribl knew any third parties were directly infringing the Asserted Patents. "Bare allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement." *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-

09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021). Splunk glosses over this failure by alleging that Cribl posted materials "instructing, encouraging, implementing, and/or directing others how to use Stream and Edge" through the publication of "instructions" on its website and YouTube. Compl. ¶141. However, this bare allegation fails to explain how providing these "instructions" led to Cribl's knowledge that others would infringe the Asserted Patents by following them, in light of the myriad ways Cribl's products can be used. Splunk's contributory infringement claims are also improperly conclusory and vague with respect to pre-filing knowledge of third-party infringement. *See id.* ¶¶141, 168, 197, 220, 257 (merely alleging "Cribl sells Stream and Edge to customers who use Stream and Edge in an infringing manner"). More is required to plausibly allege knowledge of infringement. *Uniloc*, 2018 WL 2047553, at *4.

### C.     Splunk Fails Sufficiently to Allege the Requisite Specific Intent

Splunk's willfulness and inducement claims fail plausibly to allege Cribl knew of the Asserted Patents and, therefore, plausibly plead Cribl had a specific intent to infringe. "[W]illfulness requires pleading more than knowledge of the patent and direct infringement — it requires a specific intent to infringe." *MasterObjects*, 2021 WL 4685306, *6 (not reaching specific intent where no pre-suit knowledge of infringement); *Finjan*, 2018 WL 905909, at *4-5 (inducement also requires "specific intent to encourage another's infringement" but deficient pre-suit knowledge allegations "alone require[] dismissal of…[plaintiff's] induced infringement claims").

Further, Splunk's inducement claims also should be dismissed for failure to plead Cribl *specifically intended* for its customers to infringe. *Fluidigm*, 2020 WL 408988, at *3 (citing *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Induced infringement "requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). Here, however, Splunk only makes conclusory allegations, merely asserting Cribl "has committed and continues to commit affirmative acts that cause infringement of one or more claims of the [Asserted Patent] with knowledge of the [Asserted Patent] and knowledge or willful blindness that the induced acts constitute infringement of one or more claims of the [Asserted Patent]." *See* Compl. ¶¶140, 167,

196, 219, 256. These vague allegations simply recite legal elements, and fail to articulate facts that Cribl knew both: (1) the alleged acts infringed the Asserted Patents, and (2) the promotion of its products would induce or encourage others to infringe the Asserted Patents. Moreover, the Complaint fails to provide any specific allegations that map the instructions Cribl allegedly provides to the performance of the claimed steps of the Asserted Patents. *See Fluidigm*, 2020 WL 408988, at \*3 ("The question is not just whether [product] instructions describe the infringing mode, but whether the instructions teach an infringing use of the device such that [a court may] infer from those instructions an affirmative intent to infringe the patent") (citing *Takeda Pharms. v. West-Ward Pharm.*, 785 F.3d 625, 631 (Fed. Cir. 2015)).

Other cases in this District have found such allegations insufficient. In *Uniloc*, the court found "training videos, demonstrations, brochures, and installation and user guides," and defendant's websites, listed "with no explanation as to what specific site content allegedly induc[ed] infringement, or how [they infringed]," were "vague and conclusory allegations…[that] do not amount to factual content supporting any reasonable inference" that defendant possessed specific intent. 2018 WL 2047553, at \*4; *see also CAP Co., Ltd. v. McAfee Inc.,* No. 14–cv–05068–JD, 2015 WL 3945875, at \*5 (N.D. Cal. June 26, 2015) ("passing references" to "user manual guides" and "support articles" "without ever saying what those materials contain [was] wholly inadequate for an inference of specific intent."); *Hypermedia Navigation LLC v. Google LLC*, No. 18-cv-06137-HSG, 2019 WL 1455336, at \*3 (N.D. Cal. Apr. 2, 2019) (dismissing inducement claims where complaint referred to defendant's materials without "detail[ing] *how* an end user would infringe [the asserted] patents by following instructions in the links provided in the complaint") (emphasis in original).

### D.    Splunk Inadequately Pleads the Lack of Substantial Non-Infringing Uses

Splunk's contributory infringement claims should be dismissed because Splunk has not sufficiently pled a lack of substantial non-infringing uses. *Sonos,* 591 F. Supp. 3d at 647 (patentee must allege accused product is not "a staple article or commodity of commerce suitable for a substantial non-infringing use."). For each Asserted Patent, Splunk alleges little more than a conclusory statement reciting legal elements. *See* Compl. ¶¶141, 168, 197, 220, 257 (alleging, *e.g.,* "Cribl has committed and continues to commit affirmative acts that contribute to the infringement

by others, including, but not limited to, the sale, offer for sale, and/or import by Cribl of Stream and Edge in the United States, with knowledge of the [Asserted Patent] and knowledge that Stream and Edge have no substantial non-infringing uses."). But as this Court has observed when dismissing similar contributory infringement claims, such "merely formulaic recitation[s] of Section 271(c) [are] not entitled to the presumption of truth." *Uniloc*, 2018 WL 2047553, at *5.

Splunk's conclusory allegations that "Stream and Edge are especially made for or adapted for use to infringe, are not staple articles of commerce, and are not suitable for substantial non-infringing use" should be disregarded. As in *Apple v. Princeps*, Case No. 19-cv-06352-EMC, 2020 WL 1478350, at *5 (N.D. Cal. Mar. 26, 2020), Splunk fails to explain whether Cribl knew that the accused products are "specifically made and are not a staple article of commerce suitable for substantial non-infringing use." *See Fluidigm*, 2020 WL 408988, at *4 ("*How* this language shows defendant's product *cannot but infringe* is unclear and never explained. Without such explanation, the conclusion of no non-infringing uses is implausible") (emphasis in original).

## II.     Section 101 Requires Dismissal of Splunk's Patent Claims

Courts determine Section 101 eligibility through a two-step test. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). At step one, the Court determines whether the claims are directed to an abstract idea despite their computer features. *Id.* at 218. This analysis depends on the language of the Asserted Claims themselves. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). In making this inquiry, the Court considers "whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 19-cv-05903-JST, 2020 WL 6129139, at *1 (N.D. Cal. Sept. 2, 2020) (citation omitted), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021). A claim that could be performed by a human, exercising generic computer-implemented steps, is often abstract. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("*Symantec*").

At step two, the Court determines whether the claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-22;

*Symantec*, 838 F.3d at 1322 (any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification."). Nor can claims simply recite "generic functional language to achieve [the] purported solutions" without claiming "'*how* the desired result is achieved.'" *Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted) (emphasis in original). To satisfy §101, software cannot merely organize existing information into a new form, carry out a longstanding commercial practice, or otherwise recite a long prevalent, fundamental practice now accomplished with the benefit of a computer. *See Return Mail, Inc. v. U.S. Postal Serv*., 868 F.3d 1350, 1368 (Fed. Cir. 2017), *reversed and remanded on other grounds*, 139 S. Ct. 1853 (2019); *Intellectual Ventures I LLC v. Cap. One Fin. Corp. (Capital One Financial)*, 850 F.3d 1332, 1340-41 (Fed. Cir. 2017); *Symantec*, 838 F.3d at 1313-14. Only those claims that "improve the functioning of the computer itself" or provide technological solutions to technical problems are patent eligible under §101. *Alice*, 573 U.S. at 225; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014).

Whether an asserted patent is invalid for failure to satisfy §101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citation omitted). While the step two inventiveness inquiry may occasionally involve "underlying issues of fact," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), *cert. denied*, No. 18-415 (U.S. Jan. 13, 2020), a factual dispute arises only if the claims themselves capture the alleged inventiveness or are directed to an allegedly inventive concept contained in the specification, *id.* at 1369-70.

### A.   The '206 Patent Claims are Invalid under Section 101

Claim 1 is directed to the abstract idea of 1) selecting a subset of test data from a larger data set, 2) applying a rule to look for a pattern match within the test data, and 3) if the rule works, applying that rule to the larger data set. The '206 Patent describes users previewing application of a "data parsing rule" on a subset of machine data. '206 Patent, 1:20-22; Compl. ¶104. Stripped of excess verbiage, Claim 1 of the '206 Patent discloses a method "performed by one or more computing devices" consisting of: "selecting" and "analyzing" a portion of "raw data" to find a

match corresponding to a "parsing rule;" "parsing" the selected data using the parsing rule to transform raw data "into a set of searchable, time-stamped events" and previewing these events on a display; and "processing" at least some non-selected raw data using the parsing rule "to create searchable, time-stamped events." The patent defines "raw data" as non-indexed, unprocessed data. '206 Patent, 3:24-27.[3] According to Splunk, the claimed method allows users to preview the effects of applying a parsing rule to a subset of data before applying that parsing rule to the entire data set, thereby "prevent[ing] improperly indexed data from being added to the index…."  Compl. ¶104.

***Alice* Step One**: Claim 1 is a patent-ineligible abstract idea because it is a mental process that may be performed—albeit less efficiently—by humans. *See Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012); *Parker v. Flook*, 437 U.S. 584, 586 (1978) (holding unpatentable claims directed to "computations [that] can be made by pencil and paper," even though "primarily useful for computerized calculations"); *Purepredictive, Inc. v. H2O.AI, Inc.*, No. 17-cv-03049-WHO, 2017 WL 3721480, at *5 (N.D. Cal. Aug. 29, 2017) ("[J]ust because a computer can make calculations more quickly than a human does not render a method patent eligible."). Processes such as those recited in Claim 1 are directed to an abstract idea where they are "the sort of process that 'can be performed in the human mind, or by a human using a pen and paper[.]'" *Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1139, 1152 (Fed. Cir. 2016) (holding unpatentable claims directed to "translating a functional description of a logic circuit" because they were "directed to an abstract mental process"); *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1091 (N.D. Cal. 2016) ("claims that literally require the use of a computer, but nevertheless reflect routine automation of activities which 'could all be performed by humans without a computer' may be

---

[3] It is not necessary for the Court to address each claim of the '206 Patent; it may instead focus on a representative claim. *People.ai, Inc. v. SetSail Techs., Inc.,* 575 F. Supp. 3d 1193, 1199 (N.D. Cal. 2021). Claim 1 is representative of the six independent claims of the '206 Patent, which are all linked to the same "test rule-preview results-apply rule" abstract idea recited as a method (Cls. 1, 19), a "non-transitory computer readable medium" (Cls. 13, 33), or as a set of "subsystems" (Cls. 7, 26), which are purely generic recitations of conventional computer components.

abstract") (citation omitted), *aff'd*, 684 F. App'x. 971 (Fed. Cir. 2017).

Indeed, the pattern-matching recited in Claim 1 is not new. Pattern-matching is a long-standing mental process imitated in technology. Humans have applied this innate ability to filter results, whether it is farmers selecting produce that is ready for harvest, or recruiters selecting appropriate resumes for a given role. Such a "fundamental [and] long prevalent" practice is a quintessential abstract idea. *Symantec*, 838 F.3d at 1314 (quoting *Alice*, 573 U.S. at 219).

The problem the '206 Patent addresses is not a shortcoming in how computers operate but in how humans configure them. As Splunk explains, "[s]ometimes the search engine configuration information used to process the received raw data may include improper and/or ineffective rules that may generate ineffective index data," which may "reduc[e] the quality of search results that may be produced." '206 Patent, 1:32-40; Compl. ¶103. Splunk's alleged advance is "previewing results generated from indexing raw data before the corresponding index data is added to an index store." '206 Patent, Abstract. Claim 1 is unquestionably directed to this idea, and only this idea, namely, analyzing a test sample of data to see a rule's effects before applying the rule to the entire data set.

In this way, the "purely functional nature of the claim confirms [whether the patent] is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc*., 838 F.3d 1266, 1269 (Fed. Cir. 2016). The claims in *Elec. Power Grp., LLC v. Alstom S.A*., 830 F.3d 1350, 1351 (Fed. Cir. 2016), were similarly result-oriented, reciting "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." The Federal Circuit found the claims were directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results" that fail to describe "how the desired result is achieved." *Id*. at 1354-55. It is immaterial whether the claims analyze particular content or apply a particular type of rule because "analyzing information by steps people go through in their minds," without more, and "presenting the results of abstract processes of collecting and analyzing information," also without more, were all abstract ideas. *Id*. at 1353-54.

Any "computer devices" in Claim 1 perform only the standard computing functions of data selection, analysis, display, and processing to implement this abstract idea, and do not improve the

computer itself. *See Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123 (N.D. Cal. 2017) ("[T]he U.S. Supreme Court has recognized that information itself is intangible…. Accordingly, the Federal Circuit has generally found claims abstract where they are directed to some combination of collecting information, analyzing information, and/or displaying the results of that analysis."); *Capital One Financial*, 850 F.3d at 1340–41 (displaying a dynamic document "merely encompasses the abstract idea itself of organizing, displaying, and manipulating data of particular documents.").

  ***Alice* Step Two**: Before making a step two determination, a court first must identify those claim elements that are not abstract. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168-70 (Fed. Cir. 2018). This threshold step is necessary because step two addresses the "additional elements" the claim appends to the abstract idea, not the abstract idea itself. *Id.* at 1169 (disregarding certain claimed operations under step two because they "simply provide further narrowing of what are still mathematical operations. They add nothing outside the abstract realm.").

  Here, Claim 1 fails to recite a "saving inventive concept" in application of the idea that adds "significantly more" to the abstract idea. *See, e.g.*, *Alice*, 573 U.S. at 217–18, 221–22; *Two-Way Media*, 874 F.3d at 1338; *accord buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1353 (Fed. Cir. 2014) (requiring "a 'new and useful application' of the ineligible matter in the physical realm") (citation omitted). Nearly all of the claim's language recites either *abstract information*—such as "raw data," "signature or pattern of a known type," "a parsing rule," "searchable, time-stamped events," "graphical user interface," "user input," "data source," "one or more computing devices"— or *mental steps processing this abstract information*—"selecting" raw data, "analyzing" to find a matching pattern, "parsing" data into events, "causing a display of a preview" of the parsing results, and "processing" other data using the parsing rule. These information-based mental steps are purely functional, without specifying any particular structure or physical acts taken to implement the steps, which is another disqualifier under step two. *Two-Way Media*, 874 F.3d at 1339 (claims simply reciting "generic functional language" without claiming "'*how* the desired result is achieved'" fail step two). Indeed, displaying a data preview does not make the focus of the claims any less abstract because it is still the "generic display of information collected and organized." *BlackBerry Ltd. v. Facebook, Inc*., 487 F. Supp. 3d 870, 898 (C.D. Cal. 2019), *aff'd*, 831 F. App'x 502 (Fed. Cir. 2020);

1  *Elec. Power Grp.*, 830 F.3d at 1353 ("The advance [the claims] purport to make is a process of

2  *gathering and analyzing information* of a specified content, then *displaying the results*, and not any

3  particular assertedly inventive technology for performing those functions." (emphasis added)).[4]

4          Splunk may tout the inherent benefits of better data filtering or improved mental processes,

5  such as a higher quality stored index of data. But Claim 1 doesn't even go that far; its "computer

6  devices" perform only the standard computing functions of data selection, analysis, display, and

7  processing to implement this abstract idea. Rather than improve the computer itself, Claim 1 simply

8  displays the results of application of the user's parsing rule to the sample data, allowing *the user* to

9  decide whether the rule is satisfactory before applying the rule to the full data set. *Cf. BSG Tech*

10 *LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("[A]n improvement to the

11 information stored by a database is not equivalent to an improvement in the database's

12 functionality."); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (holding

13 that a computer-implemented process for creating images that started with data, added an algorithm,

14 and ended with new data was directed to an abstract idea and did not improve the functioning of a

15 computer, even though it required less memory and bandwidth than prior art processes);

16 *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157, 1166-67 (N.D. Cal.

17 2015) (granting Rule 12(b)(6) dismissal for ineligibility of claims directed to solving an

18 "information organization problem," and rejecting argument that the claims "improve the

19 functioning of computers"), *aff'd*, 677 F. App'x. 679 (Fed. Cir. 2017).

20     **B.      The '443 Patent Claims are Invalid under Section 101**

21          Claim 1 of the '443 Patent is directed to the abstract idea of having a remote device 1)

22 monitor network data, and 2) obtain and apply instructions to generate timestamped data and execute

23 operations to transform that data. The '443 Patent describes "mechanisms for deploying and

---

25 [4] Claim 1's "wherein" clause requiring performance "by one or more computing devices" cannot be

26 the saving inventive concept. *SAP Am.*, 898 F.3d at 1170 ("[A]n invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out

27 improved mathematical calculations, amounts to a recitation of what is 'well-understood, routine, [and] conventional.'" (quoting *Mayo*, 566 U.S. at 73)); *Alice*, 573 U.S. at 225 (claim requiring "use

28 of a computer to obtain data, adjust account balances, and issue automated instructions" do "no more than require a generic computer to perform generic computer functions").

configuring network capture technology at distributed and/or remote locations." '443 Patent, 1:51-53; Compl. ¶96. Stripped of excess verbiage, Claim 1 discloses a method where a single "remote capture agent" performs the steps of: "obtaining configuration information from a configuration server;" "monitoring network traffic" comprising network packets; "generating" "timestamped event data" from the network packets, using the configuration information, by "segmenting" the network packets into events and "associating" each event with a timestamp; and "transforming" the timestamped event data into "transformed" event data by "performing an operation involving data" contained in at least one of the events. '443 Patent, 26:28-49. The "configuration information" includes instructions on how to use an operation to "transform" the data. "For example, the configuration information may specify that the event data…be aggregated into a sum, statistic (*e.g.*, mean, median, minimum, maximum, etc.) and/or uniqueness count (*e.g.*, number of times a unique value is found in an aggregation interval)…and may also specify a calculation (*e.g.*, mathematical function, mathematical formula, etc.) to be performed on the network data and/or event data to produce the transformed event data." *Id.*, 17:1-14; *see also* 9:1-11.[5]

According to Splunk, the claimed method allows the use of "remote capture agents" that "can be deployed in distributed computing environments (such as cloud computing environments) for data capture and processing, and are configurable over a network by a configuration server in a centralized manner." Compl. ¶98. The '443 Patent states that these remote capture agents provide "mechanisms for streamlining the deployment and configuration of network capture technology at distributed and/or remote locations," '443 Patent, 2:21-23.

***Alice* Step One**: Claim 1 is a patent-ineligible abstract idea because it merely recites the functional steps of "monitoring," "segmenting," and "transforming" the network data, and fails to "sufficiently describe how to achieve [the claimed] results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (finding abstract the claimed steps of "converting," "routing," "controlling," and "monitoring" information); *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 952 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) (dismissing abstract claims "worded in such broad,

---

[5] Claim 1 of the '443 Patent is representative of claims 11 and 19, as all reflect the same method.

Case No. 22-cv-07611-WHA
DEFENDANTS' MOTION TO DISMISS

functional terms, so as to describe a desired result—routing the communication—without explaining *how* that result is achieved.") (emphasis in original); *Elec. Power Grp.*, 830 F.3d at 1356 (hallmark of an abstract claim is the "result-focused, functional character of claim language"). Indeed, claims similar to the conventional steps of "generating" and "transforming" data, as in Claim 1, have been determined to be abstract. *E.g.*, *RecogniCorp*, 855 F.3d at 1327 (finding method claim abstract where user performs operation on one form of data, resulting in a new form of data); *OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (finding terms such as "storing," "assembling," "associating," "receiving," and "transmitting" to be abstract).

Claim 1 provides no guidance on *how* to monitor the network packets, *how* to obtain the configuration information remotely, *how* to generate configuration information that can be used remotely to generate timestamped event data from the network packets and perform operations on the event data to transform it. The Federal Circuit has consistently found the requirements of §101 unmet where the claim merely recited functional language without claiming how to achieve those functions. For example, in *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018), the claims recited numerous computer steps for coordinating the display of content to a user, including an "attention manager" component for arranging the content. *Id.* at 1339-40, 1344-45. Similar to Claim 1 here, the claims in *Interval Licensing* included no details on "how the attention manager perform[ed] the function[s]" or "*how* to engineer or program the display;" the claims "simply demand[ed] the production of a desired result…without any limitation on how to produce that result." *Id.* at 1345 (emphasis in original). In *Two-Way Media*, the claims purportedly provided "an improved scalable architecture for delivering real-time information" over a network, with an "[e]mbedded…control mechanism that provides for the management and administration of users." 874 F.3d at 1333-34. Although the claims recited detailed steps for "'converting,' 'routing,' 'controlling,' [and] 'monitoring'" packetized streaming content, they did "not sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337; *see also Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1359 (Fed. Cir. 2021) (claims reciting a "television," various servers, and a "mobile device" that could "process an embedded object, constrain an executable environment in a security sandbox, and execute a sandboxed application in the executable

1    environment" did not "identify 'how' [its] functional result is achieved").

2        Claim 1 is also abstract because it does not recite a remote capture agent that processes

3    network traffic any differently than conventional network capture products. *See* '443 Patent, 1:13-

4    41 (noting conventional capture devices perform "Extract, Transform, and Load" processes on

5    network traffic data to filter, transform and/or aggregate network data). The Federal Circuit has

6    distinguished between patent-eligible claims that are "directed to an improvement in the functioning

7    of a computer" and patent-ineligible ones that recite "simply adding conventional computer

8    components to well-known business practices" or "generalized steps to be performed on a computer

9    using conventional computer activity." *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 612

10   (Fed. Cir. 2016) ("a relevant inquiry at step one is 'to ask whether the claims are directed to an

11   improvement to computer functionality versus being directed to an abstract idea'" (citation

12   omitted)).  That the claimed "capture agent" receives "configuration information" from a centralized

13   server does not make Claim 1 less abstract. The Federal Circuit has found computer claims abstract

14   despite purporting to improve distributed systems; indeed, it has found ineligible on the pleadings

15   claims for (1) a "distributed system" to collect user information and determine permissions,

16   *VeriPath, Inc. v. Didomi*, 842 F. App'x 640, 641 (Fed. Cir. 2021); (2) a "communication system"

17   with multiple "stations" controlled by a "master" station having the highest rank, *Cisco Sys., Inc. v.*

18   *Uniloc 2017 LLC*, 813 F. App'x 495, 496 (Fed. Cir. 2020); and (3) improving on a "[m]ulticasting"

19   system transmitting network packets "through a plurality of multicast routers to one or more devices

20   receiving the multicast packets," *Two-Way Media*, 874 F.3d at 1334.

21       **_Alice_ Step Two:** The claims of the '443 Patent do not improve computer functionality.

22   Instead, they recite generic computer components – "server," "network," and "remote capture agent"

23   – performing generic computer functions on data. *See Elec. Power Grp*., 830 F.3d at 1351, 1355

24   (invalidating claims directed to the "collection, analysis, and display of available information" using

25   "off-the-shelf, conventional computer, network, and display technology"). Such conventional

26   components "are not sufficient to transform abstract claims into patent-eligible subject matter." *See,*

27   *e.g.*, *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018)

28   ("standard components" such as a personal computer, display, keyboard, and data storage devices

"are not sufficient to transform abstract claims into patent-eligible subject matter."); *Secured Mail Sols. LLC v. Universal Wilde, Inc*., 873 F.3d 905, 911 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2000 (2018) ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention.").

Similarly, the '443 Patent fails at step two because it does not claim improvements to the functionality of the servers, capture agents, networks, or other computer components. *Move, Inc. v. Real Estate All. Ltd*., 721 Fed. App'x. 950, 956 (Fed. Cir. 2018) (finding plaintiff "ha[d] not cited any convincing evidence in the specification that the claimed invention improve[d] the functioning of the computer itself."). Rather, Claim 1 recites having a server instruct remote devices to collect, analyze, and transform network data generated by "event-based systems," which the patent admits pre-date the invention. *See* '443 Patent, 1:13-41, 2:56-3:7.

Splunk describes as benefits of this patent that devices "are configurable over a network by a configuration server in a centralized manner." Compl. ¶94.  But these benefits flow expectedly from arranging the server and the remote capture devices in a distributed manner, not a specific improvement in computing itself. The centralized control of remote devices to monitor, collect, and transform data (such as by filtering or aggregating) rank as generic computing methods, and do not qualify as an inventive concept. *See Two-Way Media*, 874 F.3d at 1337; *Symantec*, 838 F.3d at 1314.

### C.    The '438 Patent Claims are Invalid under Section 101

Like the '443 Patent, the '438 Patent relates to the distributed arrangement of a configuration server and remote capture device, and is directed to the abstract idea of remotely instructing the capture device to monitor, receive, process, and transform network data into event data using configuration data. *See* '438 Patent, 1:43-45, 2:20-23; Compl. ¶¶100-101. Claim 1 recites a three-step method "performed by a configuration server coupled to a remote capture agent" over a network: "receiving input requesting creation of an event stream," "generating configuration data based on the input," and "sending the configuration data to the remote capture agent" that is monitoring network traffic. The received input includes "an indication of a protocol to be associated with the event stream," and a "selection of an event attribute to be associated with the protocol indicating the data to be extracted from network packets." The "configuration data" sent to the

remote capture agent "caus[es] the remote capture agent to generate the event stream…according to the configuration data." The '438 Patent does not define "event attribute," but dependent claim 7 indicates that it comprises "a source address, a destination address, a network address, or a port."[6]

*Alice* **Step One:** Claim 1's recitation of a distributed computing components, and centralized command, is an age-old, fundamental concept.  For example, military commanders or business managers (1) conceive instructions yielding a particular result (like "configuration data" generated by the "configuration server" designed to extract network data indicated by an "event attribute"), (2) distribute those instructions among subordinates (sends the "configuration data" to the remote capture agents), and then (3) the subordinates follow those instructions (here, to generate the event stream and extract data from that stream, as directed).  Claim 1's reflection of this longstanding, fundamental human concept is another indication of abstraction.  *See Symantec*, 838 F.3d at 1314 ("'fundamental…practice[s] long prevalent' are abstract ideas") (quoting *Alice*, 573 U.S. at 219).

The '438 Patent acknowledges that the prior art *included* network capture devices that monitored network traffic, captured that network traffic, and performed Extract, Transform, and Load processes "to filter, transform, and/or aggregate data from the network traffic and enable the extraction of business value from the data." '438 Patent, 1:49-2:9. Thus, the purported innovation recited in Claim 1 is to not configure these network capture agents locally, but to do so in a centralized manner, over a distributed network. *Id.*, at 2:20-23.

This is a patent-ineligible abstract concept. Indeed, courts routinely have found that claims for distributed computing, including coordination to break up tasks across multiple computers, are directed to abstract ideas and ineligible. For example, in *Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1178-80 (W.D. Wash. 2016), *aff'd*, 676 F. App'x 1008 (Fed. Cir. 2017), claims including "task handlers" on multiple networked computers were directed to "the abstract idea of distributed processing akin to the military's command and control system." In *Device Enhancement LLC v. Amazon.com, Inc.*, 189 F. Supp. 3d 392, 403-04, 404 n.15 (D. Del. 2016), ineligible claims for "[u]sing distributed architecture to enable remote adaptation of applications beyond the

---

[6] Claim 1 of the '438 Patent is representative of claims 13 and 22, as all reflect the same method.

capabilities of an individual device" were directed to an abstract idea. And in *Coho Licensing LLC v. Glam Media, Inc.*, No. C 14-01576 JSW, 2017 WL 6210882 (N.D. Cal. Jan. 23, 2017), claims for "allocating," "sub-allocating," and "dividing" a "task portion" into a "subtask portion" were directed to the abstract idea of "dividing and subdividing tasks for distributed processing." *Id*. at *4-5, *aff'd*, 710 F. App'x 892 (Fed. Cir. 2018); *see also SAP Am.*, 898 F.3d at 1165, 1167-68, 1170 (ineligible claims with "'parallel processing' computing architecture") (internal citation omitted).

***Alice* Step Two:** Purely functional claim elements—those reciting a result or function without a particular way for achieving or performing it—are inadequate under step two. Likewise, routine, well-known, and conventional elements cannot save a claim under step two. The '438 Patent broadly describes the computer system capable of performing the claimed invention, including a "processor [], memory [], storage [], and/or other components found in electronic computing devices." '438 Patent, Fig. 10, 23:25-24:24.   No particular improvements or requirements are indicated for the claimed remote capture agent or configuration server.  *Id*.

Claim 1 is analogous to the one held to be ineligible under §101 in *Device Enhancement*, where the claim at issue recited a method that the patentee argued was directed to "a solution to the computer-specific problem of delivering multimedia content to a variety of devices with limited resources and different capabilities." 189 F. Supp. 3d at 403. That claim required tasks between a "client-side application" on the terminal device and a "remote application" on the server be "dynamically split[]" according to "predetermined computational resources and inherent capabilities." *Id*. The claim further required communications over a network between the server and the terminal device to exchange data, deliver the content, and exchange messages. *Id*. The court held the claim ineligible because it "preempts virtually all possible ways of performing" the idea of "using distributed architecture to increase the capabilities of individual devices by using remote resources," as "the patented method uses computerized devices (of any type) in conventional ways (installation of applications, data exchange, and data processing) without delineating any particular way of putting the ideas into practice." *Id*. at 405. The court also held that "the very steps of the method comprise nothing more specific than the underlying idea itself." *Id*.

1    Claim 1 of the '438 Patent suffers from the same deficiencies.  Its use of a distributed

2  arrangement, where a configuration server instructs a remote computing device over a network as

3  to which data to extract from network traffic, preempts virtually all possible ways of performing

4  these steps.   Because Claim 1 recites purely functional language, and does not provide any

5  improvements to *specific* computer hardware or software components, it fails at step two.

6    **D.    The '312 Patent Claims are Invalid under Section 101**

7    Claim 1 of the '312 Patent is directed to the abstract idea of classifying and storing data in

8  an organized manner by segmenting data into "searchable" events, and generating a "normalized"

9  time stamp that is associated with each event.[7] When no time information is available for a particular

10 event, a time stamp is calculated using one or more earlier time stamps. The '312 Patent relates to

11 systems that analyze prior art "sequences of time stamped records" of discrete events, such as

12 "processing logs, market transactions, and sensor data from real-time monitors." '312 Patent, 1:31-

13 39, Fig. 1.[8] Stripped of excess verbiage, Claim 1 discloses a method of "improving machine data

14 analysis" consisting of: "creating a set of searchable events by segmenting" data; detecting whether

15 "time information" is present in the data, and if so, "extracting" that time information; "determining"

16 a time zone in that time information; and "normalizing" the time information based on its time zone

17 to generate a "time stamp." If no time information is detected in the data, a time stamp is calculated

18 using one or more time stamps from "earlier processed events."  Compl. ¶¶112, 228.

19   According to Splunk, indexing time series data is "complicated because the data can be

20 collected from multiple, different sources asynchronously and out of order." Compl. ¶110; '312

21 Patent, 2:6-9. Further, time stamps coming from different sources "can have almost unlimited

22 number formats making identification and interpretation difficult." Compl. ¶110; '312 Patent, 2:14-

23

24 [7] Claim 1 of the '312 Patent is representative of claims 7 and 11, as all reflect the same method.

25 [8] The "raw time series data" recited in Claim 1 existed in the prior art.  *See* '312 Patent, 5:7-22, Fig.

26 1 (labeled "Prior Art", and showing three time series data environments with which the patent's
   "improved analysis method" can be used: web servers and application servers generating server

27 logs; a market-trading environment generating real-time transaction records; and real-time
   monitors yielding sensor data, *e.g.,* recorded measurements.).  Software that could analyze time series data

28 also existed in the prior art.  *See id.*, 3:28-30 (describing Sawmill and Google's Sawzall products
   capable of providing real-time data analysis.).

19. Splunk alleges the claimed method provides "techniques and implementations" that address "detection of time information, generation of accurate time stamps, and calculating an accurate time stamp if time information does not exist in the raw data." Compl. ¶112.

*Alice* **Step One**: The claims of the '312 Patent recite a mental process. Claim 1 parallels the activities of a clerical assistant, similar to the corporate mailroom analogy the Federal Circuit in *Symantec* used to find claims patent-ineligible. 838 F.3d at 1317. An assistant receives a collection of pages reflecting meeting minutes, and separates ("segments") those pages into individual reports, one report for each meeting. The assistant then reorganizes the reports chronologically, using the time and date written at the top of each report. The assistant can take into account the geographic location of a meeting, adjusting the meeting's time and date based on its time zone. If a report lacks time or date information, the assistant can assign a time and date "based on its context," using other information in the report, such as the meeting attendees, meeting location, and topics discussed.

That Claim 1 recites a mental process, untethered from a technical environment, is demonstrated by its failure to incorporate any computer or computing components (except for the nonspecific recitation "wherein the method is performed by one or more computing devices" *See* '312 Patent 1:47-48). Processing data (such as segmenting an event log data stream into individual events), extracting data, searching for matching patterns in data, and interpolating data, are all conventional computer activities that conventional computers perform. Thus, far from any "specific implementation of a solution to a problem in the software arts," Claim 1 focuses on "an abstract end-result" of dividing and assigning time stamps to events that only require "generalized steps to be performed on a computer using conventional computer activity." *RecogniCorp*, 855 F.3d at 1326-27.

Moreover, the functional language in Claim 1 is unbounded, providing no technical details explaining how the steps are to be accomplished. For example, as "a rose is a rose" tautology, Claim 1 recites "creating a set of searchable events by segmenting raw time series machine data received…into searchable events." How this segmentation is achieved is unspecified. Claim 1 is also silent on how time stamps are generated, including how time information is extracted from the raw data, and how, when time information is unavailable, time stamps are calculated "using one or

more time stamps stored from previous events." The '312 Patent specification is equally short on technical detail. It vaguely refers to "segmentation rules" ('312 Patent, 10:59-63), devotes just one paragraph to a general description of the time stamp extraction and calculation recited in the claim ('312 Patent, 9:8-47), and describes in a *single sentence* the claimed steps of time zone offset generation and time stamp normalization. *Id.*, 9:19-21 ("Additionally, the implementation takes into account time zone information and normalizes the times to a common offset.").[9] Without guidance on how to perform these functional steps, Claim 1 merely "manipulates data but fails to do so in a non-abstract way." *Two-Way Media*, 874 F.3d at 1338; *see also People.ai*, 575 F. Supp. 3d at 1198.

Splunk's infringement mapping impermissibly covers *any* way of performing the claimed functions; for example, it maps the "time stamp generation" step as covering a system that "perform[s] timestamping on machine data, first by detecting time information *already present in the data* that has been synthesized into events." Compl. ¶236 (emphasis added); *see Interval Licensing*, 896 F.3d at 1345 (claim ineligible where, "[i]nstead of claiming a solution for producing that result, the claim in effect encompasses all solutions"). Any benefits arising from this claimed invention flow not from *improved* technology, but from "performing an abstract idea in conjunction with [] well-known" computer technology and functional components. *BSG Tech*, 899 F.3d at 1288. That is a hallmark of claims directed to an abstract idea at *Alice* step one.

***Alice* Step Two:** The '312 Patent relies on exactly the sort of conventional hardware and software the Federal Circuit has held does not to rise to an inventive concept. Under the heading "Implementation," the '312 Patent states that "[a]ll of the processes can run on a single machine or they can be divided up to run on separate logical or physical machines." '312 Patent, 16:22-24. Alternatively, "the invention is implemented in computer hardware, firmware, software and/or combinations thereof." *Id.*, 16:25-27. Nothing in the claim "requires anything other than

---

[9] Even if the '312 Patent did describe in detail the process for segmenting machine data; extracting time information; and generating, normalizing, and assigning time stamps, it would still merely be an abstract idea carried out using conventional means. *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1018 (N.D. Cal. 2017) ("Because information itself is an intangible, amassing information produces an intangible, and applying mathematical algorithms to sort or analyze that information is essentially a mental process. As a result, both acquiring and analyzing information are regularly treated as within the realm of abstract ideas.") (internal citations omitted).

conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339. Rather, the specification here concedes the asserted invention "can be performed by a programmable processor executing a program of instructions to perform functions of the invention by operating on input data and generating output." *Id.*, 16:30-33. The asserted invention can also be implemented "in one or more computer programs that are executable on a programmable system including at least one programmable processor coupled to receive data and instructions from, and to transmit data and instructions to, a data storage system, at least one input device, and at least one output device," adding that "[s]uitable processors include, by way of example, both general and special purpose microprocessors." *Id.*, 16:34-45.

In these ways, the '312 Patent requires only the use of generic components in conventional ways, which is precisely the sort of attempt at monopolization through "wholly generic computer implementation" the Supreme Court warned against in *Alice*. 573 U.S. at 223-24 (quoting *Mayo*, 566 U.S. at 77); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (generic storing and transmitting limitations did not provide an inventive concept); *BSG Tech*, 899 F.3d at 1290 (claim to specific database structure provides no inventive concept); *see also In re TLI*, 823 F.3d at 612-13 (storing data in an organized manner is abstract). The step of extracting time information from the event data similarly lacks an inventive concept. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that extracting and storing data using generic components is neither new nor inventive.).

The only portion of Claim 1 that mentions any component is the last clause, "wherein the method is performed by one or more computing devices," which is insufficient to confer patent eligibility. *See Secured Mail*, 873 F.3d at 911 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."). Nothing in Claim 1 improves computer functionality; it does not recite improvements to the functionality of the software, interfaces, or other computer components. *Move*, 721 Fed. App'x. at 956 (finding the plaintiff "ha[d] not cited any convincing evidence in the specification that the claimed invention improve[d] the functioning of the computer itself").

Claim 1, therefore, "merely describe[s] the functions of the abstract idea itself, without

particularity," which is insufficient under *Alice* step two. *Capital One Financial*, 850 F.3d at 1341. Whether taken individually or as an ordered combination, the claim elements of "creating" "segmenting," "detecting," "extracting," generating," "calculating," and "associating" are functional and generic. Just as the Federal Circuit held in *Two-Way Media* that "first processing the data, then routing it, controlling it, and monitoring its reception" amounts to a "conventional ordering of steps," so too does Claim 1 of the '312 Patent recite a conventional sequence of steps for a generic computer to implement. 874 F.3d at 1339. There is nothing inventive about the simple ordering of (1) segmenting data; (2) detecting information in that data; (3) extracting information when present; (4) generating time stamps from that information; (5) calculating new time stamps when the information is missing; and (6) associated these time stamps with the data. Neither the patent nor the Complaint alleges in non-conclusory terms that such a sequence is unconventional. *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018). These are simply the functions needed to perform the abstract idea, and nothing more.

### E.     The '467 Patent Claims are Invalid under Section 101

Claim 1 of the '467 Patent is directed to the abstract idea of receiving, processing, and backing up data. The '467 Patent relates to "deal[ing] with streams of live data that can be generated faster than they can be handled by certain computer hardware and software." '467 Patent, 1:25-38, 8:47-59; Compl. ¶¶106-7. Splunk explains the patent discloses "improvements to dual-queue functionality... through techniques that concern dynamic instantiation...of dual-queue nodes...in connection with receipt of live data, such that nodes are not instantiated unnecessarily...." *Id*. Stripped of excess verbiage, Claim 1 discloses a three-step implementation that receives "live data," "dynamically instantiat[es]" a "dual-queue node" if it is determined that a dual-queue node assigned to an entity is "uninstantiated," and routes the live data to the newly instantiated dual-queue node. Instantiation requires initializing a "live data queue" that receives live data, and a "stale data queue" that stores "a persistent backup of the live data."[10]

*Alice* **Step One**: Claim 1 is directed to a patent-ineligible abstract idea because it merely

---

[10] Claim 1 of the '467 Patent is representative of claims 29 and 30, as all reflect the same method.

addresses the long prevalent, fundamental human practice and conventional notion of handling overflow traffic on demand. For example, when the main waiting room is full, a doctor's office can open up an annex where additional incoming patients can sit. (Or, more humorously, Lucy and Ethel can stuff chocolates into their mouths, hats, and blouses when they cannot keep up with the pace of incoming chocolates at the candy factory.). Such claims are facially abstract. *People.ai*, 575 F. Supp. 3d at 1198 ("For software to be patent eligible, it must go beyond merely…reciting a long prevalent, fundamental practice now accomplished with the benefit of a computer"); *Intellectual Ventures I LLC v. Symantec*, 234 F. Supp. 601, 607 (D. Del. 2017) (claims abstract where focus is "abstract idea of backing up data….It is undisputed that institutions have long backed up data in general").

Claim 1 is directed to an abstract idea because it recites mere functions and results unlimited by particular structures or acts for how to perform or achieve them. *See Two-Way Media*, 874 F.3d at 1337 (holding patent-ineligible claims that require "functional results" but do not sufficiently describe "how to achieve these results in a non-abstract way"). Claim 1 is abstract because it recites the result of instantiating a dual-queue node—providing a pathway and backup location for live data—without explaining how this result is achieved. It claims *nothing more than* the abstract idea of creating a two-queue system where one queue receives and provides data, and a second backup queue contains the same data in the event the first node is unable to fully process it. It provides no technical details as to how the node is "dynamically" instantiated, how the live data queue portion of the node is "enabled" to receive "live data for processing," and how the stale data queue portion of the node is "enabled" to store a "persistent backup of the live data." *Elec. Power Grp.*, 830 F.3d at 1351 (finding abstract claims directed to "the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions"); *Voip-Pal.Com*, 411 F. Supp. 3d at 952 (dismissing abstract claims "worded in such broad, functional terms, so as to describe a desired result…without explaining *how* that result is achieved.") (emphasis in original). The claimed dual-queue node is thus "a black box for performing the desired abstract function.  In other words, the claim invokes a structure but, in substance, is directed to a particular end result." *People.ai*, 575 F. Supp. 3d at 1207.

***Alice* Step Two**: Claim 1 addresses the well-known, conventional notion of setting up an

arrangement to handle overflow traffic. The use of a "dual-queue node" that can handle both live data as well as the overflow data merely encompasses this same abstract idea. Indeed, it is difficult to conceptualize a "best practice" for handling data overflow situations without considering the use of an additional storage location separate from the main dataflow, triggering the preemption concern the Supreme Court has noted. *See Alice*, 573 U.S. at 216-17 (patent claiming "the[] building blocks of human ingenuity" risks pre-empting use of an approach in all fields, and "would effectively grant a monopoly over an abstract idea.") (internal citations omitted). Setting up storage of incoming data in a secondary location for later transmission simply implements generic computer functionality of receiving and storing data. This fails as an inventive concept. *E.g., Capital One Financial*, 850 F.3d at 1341 ("Although these data structures add a degree of particularity to the claims, the underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing, displaying, and manipulating data[.]"); *Smart Sys. Innov., LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017) (claims "directed to an abstract idea" and "merely requir[e] generic computer implementation," "do[ ] not move into section 101 eligibility territory."). Even Splunk's stated benefits from the claimed technical improvement—avoiding lost data when incoming live data is received faster than the in-memory pathway—reflect the conventional benefits achieved by applying well-known caching or storing functionality. *See People.ai*, 575 F. Supp. 3d at 2014.

The '467 Patent itself further supports that the claim does not provide improvements to *specific* computer hardware or software components. The specification does not describe an improved machine, but instead broadly states that "the invention may be described in the general context of computer code or machine-useable instructions…being executed by a computer or other machine, such as a personal data assistant or other handheld device." '467 Patent, 22:37-41. The '467 Patent goes on to state that "the invention may be practiced in a variety of system configurations, including handheld devices, consumer electronics, general-purpose computers, more specialized computing devices, etc." *Id.*, 22:45-48. Claim 1 amounts to "nothing significantly more" than an instruction to apply the abstract idea of initiating a dual-queue node "using some unspecified, generic computer." *Alice*, 573 U.S. at 225-26. Initialization of a dual-queue node, with its live data and stale data queues, is not "significantly more" than the abstract method of having

live and overflow queues. *Id.* "Under our precedents, that is not '*enough*' to transform an abstract idea into a patent-eligible invention." *Id.*

### III.   Splunk's Indirect Copyright Infringement Claims Should Be Dismissed

Splunk's indirect copyright infringement claims against Cribl and defendant Clint Sharp in Count VI should be dismissed because Splunk does not adequately allege that Cribl or Mr. Sharp had the knowledge or intent required to plead contributory or induced copyright infringement. *See, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (contributory copyright infringement "requires more than a generalized knowledge…of the possibility of infringement" by a third party); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (inducement requires "a 'clear expression' of a specific intent to foster infringement"). Splunk makes no allegations regarding Cribl's knowledge and merely alleges Mr. Sharp acted "with knowledge," *see* Compl. ¶267, and that Mr. Sharp and Cribl acted "intentionally," see Compl. ¶271. These bare recitals of elements are insufficient to state a claim. *See, e.g.*, *Epikhin v. Game Insight N. Am.*, No. 14-cv-04383-LHK, 2015 WL 2412357, at *4 (N.D. Cal. May 20, 2015) (granting motion to dismiss where plaintiff alleged no facts in support of "threadbare assertion" that defendants "had knowledge of the infringing acts" and had "induced, caused, and materially contributed to the infringing acts of others"); *see also Kilina Am., Inc. v. SA & PW, Inc*, No. CV-19-03786-CJC-KSX, 2019 WL 8685066, at *3 (C.D. Cal. Aug. 27, 2019).[11]

### IV.   Splunk's DMCA Claim Against Mr. Sharp Should Be Dismissed

Finally, Splunk's claim for violation of the Digital Millennium Copyright Act based on Mr. Sharp's alleged falsification, removal, and alteration of copyright management information ("CMI"),[12] 17 U.S.C. §1202, should be dismissed for two reasons. First, Splunk has failed to identify

---

[11] Equally unavailing are Splunk's allegations "on information belief," *see* Compl. ¶267, regarding Mr. Sharp's knowledge and intent.  *Cf. Delphix Corp.*, 2014 WL 4628490, at *2 (in dismissing indirect patent infringement claims, noting that, pleading "on information and belief" "undermine[d] [plaintiff's] argument that the facts it has pleaded are sufficient to support a plausible inference of pre-suit knowledge").

[12] "Copyright Management Information" can include, for example, titles, names of authors, copyright owners, and terms and conditions for use of the work.  17 U.S.C. §1202(c).

the CMI at issue with the specificity courts in this District have required. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing §1202(b) claims where plaintiff, *inter alia*, failed to describe the removed or altered CMI). Here, Splunk has not reproduced, attached as an exhibit, or adequately described the alleged "copyright headers" on source code that were removed or altered, other than to allege that they "indicat[ed] authorship and ownership information reflecting Splunk's copyright" in certain code. Greater specificity regarding the header's language, location and appearance are needed because not all "copyright headers" constitute CMI under the DMCA. *See Logan v. Meta Platforms, Inc.*, No. 22-CV-01847-CRB, 2022 WL 14813836, at *8 (N.D. Cal. Oct. 25, 2022) (dismissing a false CMI claim, in part, because the CMI was a "[generic] copyright tag on the bottom"); *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670-71 (9th Cir. 2020) (copyright notice not CMI because location and generic language did not sufficiently communicate ownership in works).

Second, Splunk fails to plead the required scienter that the defendant act "knowingly and with the intent to induce, enable, facilitate, or conceal infringement, 17 U.S.C. §1202(a), or "knowing, or…having reasonable grounds to know, that it will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. §1202(b) Here, Splunk does not allege that it informed Mr. Sharp of his allegedly infringing use prior to any supposed falsification, alteration, or removal of CMI. *E.g.*, *Davis v. Pinterest, Inc.*, No. 19-CV-07650-HSG, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021) (emails, which did not contain "information about any specific instances of alleged infringement" were insufficient to allege notice and scienter). Nor did Splunk include exhibits, images, or explicit descriptions sufficient to enable the Court to evaluate whether the copyright headers provided reasonable grounds to know that their modification may facilitate infringement. *SellPoolSuppliesOnline.com*, 804 F. App'x at 670-71.

DATED: December 23, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Michael T. Zeller*
Michael T. Zeller
Attorneys for Cribl, Inc. and Clint Sharp