UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SPLUNK INC.,

        Plaintiff,

  v.

CRIBL, INC. and CLINT SHARP,

        Defendants.

No. C 22-07611 WHA

**ORDER DENYING MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

Following the order granting in part and denying in part defendants' motion to dismiss, plaintiff moves for leave to file an amended complaint. For the reasons stated herein, plaintiff's motion is **DENIED**.

## STATEMENT

The order on the motion to dismiss described the purported facts at issue (Dkt. No. 55 at 1–3). Briefly, they are as follows.

Patent and copyright owner Splunk Inc. was founded in 2003 and runs a platform for analyzing large volumes of data. Its flagship product, Splunk Enterprise, ingests flows of data from disparate sources and indexes that data, allowing customers to interact with and monitor their data in real time. Through its Technology Alliance Partner ("TAP") program, Splunk grants partners a license to use its software development tools and a limited license to run Splunk Enterprise (Compl. ¶¶ 1, 17, 25).

Alleged infringer Cribl, Inc. was founded in 2017 by former Splunk employees, including alleged infringer and Cribl CEO Clint Sharp. In 2018, Cribl launched its first product, now known as Stream, and joined the TAP program by entering into a TAP agreement with Splunk. In 2021, Splunk terminated Cribl's membership in the TAP program and their TAP agreement. Roughly one year later, it filed a complaint against Cribl and CEO Sharp in the District of Delaware. After Cribl and CEO Sharp indicated that they intended to raise challenges related to personal jurisdiction and venue, the parties agreed that Splunk would voluntarily dismiss its complaint and refile in the Northern District of California (Compl. ¶¶ 2, 38–39, 67; Br. 2, Exhs. S–T).

According to Splunk's complaint, Cribl infringed patents awarded to Splunk for its foundational innovations, developed and marketed products by making unlicensed copies of Splunk's copyrighted software, and used misappropriated information to compete unfairly. Relevant here, Splunk asserted five patents: U.S. Patent Nos. 9,208,206; 9,762,443; 10,805,438; 10,255,312; and 9,838,467. The applications were filed between 2014 and 2019, and the patents issued between 2015 and 2020. Once Splunk refiled its complaint in this district, Cribl and CEO Sharp moved to dismiss patent and copyright claims (Dkt. No. 31).

The prior order granted the motion to dismiss with respect to Splunk's patent claims and denied it with respect to Splunk's copyright claims. Specifically, that order granted the motion as to all claims for direct patent infringement against Cribl based on ineligibility, as well as all claims for willful and indirect patent infringement against Cribl based on separate grounds. Meanwhile, it denied the motion as to all claims for indirect copyright infringement against Cribl and CEO Sharp, as well as the claim for violation of Digital Millennium Copyright Act Section 1202 against CEO Sharp (Dkt. No. 55).

The order on the motion to dismiss allowed Splunk to move for leave to amend its complaint, which Splunk has now done. This order follows full briefing and oral argument.

**ANALYSIS**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice requires it. "[A] district court should consider several factors including

2

1  undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by
2  amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown*
3  *v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*,
4  371 U.S. 178, 182 (1962)). "Futility of amendment can, by itself, justify the denial of a motion
5  for leave to amend. If no amendment would allow the complaint to withstand dismissal as a
6  matter of law, courts consider amendment futile." *Kroessler v. CVS Health Corp.*, 977 F.3d
7  803, 815 (9th Cir. 2020) (internal quotation and citations omitted).

Splunk's position is that amendment would not be futile because its proposed amended complaint "supplies additional substantial factual detail and evidence that preclude dismissal at the Rule 12(b)(6) stage of Splunk's (1) direct patent infringement claims under [Section] 101 and (2) willful and indirect patent infringement claims" (Br. 1). Upon review, this order disagrees.[1]

\*   \*   \*

Recall that under the Supreme Court's *Alice* test for patent ineligibility, a claim falls outside of Section 101 of the Patent Act if (1) it is directed to a patent-ineligible concept, like an abstract idea, and (2) it lacks elements sufficient to transform it into a patent-eligible application. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). And, patent eligibility is a question of law that may contain underlying questions of fact. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). "[A]t step two of the *Alice* test, whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. However, of course, not every [Section] 101 determination contains genuine disputes over the underlying facts material to the [Section] 101 inquiry." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) (internal quotations and citations omitted). When there are no factual allegations that, taken as true,

---

[1] In their opposition, Cribl and CEO Sharp argue that amendment would be futile and, separately, that amendment would cause undue prejudice because Cribl has yet to file petitions for *inter partes* review ("IPR") of the asserted patents and only has a few months left to do so. But it was Cribl's choice not to file petitions for IPR. As such, this is not cognizable prejudice. At the hearing, the undersigned rejected the prejudice argument, and it will not be discussed further (Tr. 8:5–9:9, 10:5–18; *see* Opp. 23–25).

3

prevent resolution of patent-eligibility disputes as a matter of law, they may be resolved on a Rule 12 motion. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020).

Splunk argues that its amended factual allegations prevent resolution of this action's patent-eligibility disputes as a matter of law at this juncture because they "further explain how the claims capture improvements over conventional technology and differ from conventional practices associated with that technology" (Br. 1) (emphasis omitted). In its motion, Splunk walks through language it seeks to add to its complaint with respect to each asserted patent (*see* Br. 4–23). According to Splunk, its amended allegations raise factual disputes underlying the *Alice* analysis, so amendment would not be futile.

At the hearing, in support of using factual allegations to prevent resolution of patent-eligibility disputes on a Rule 12 motion, counsel for Splunk quoted a passage from *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) (*see* Tr. 20:8–21:10). In that case, the Federal Circuit explained that it had "repeatedly cited allegations in the *complaint* to conclude that the disputed claims were potentially inventive" in *Aatrix*, and "[w]hile [it] d[id] not read [that case] to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Cellspin*, 927 F.3d at 1317 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)). Counsel for Cribl and CEO Sharp responded by quoting the very next sentence in *Cellspin*: "*As long as what makes the claims inventive is recited by the claims*, the specification need not expressly list all the reasons why this claimed structure is unconventional." *Ibid.* (emphasis added) (*see* Tr. 21:21–23:18).

Therein lies the rub. True, "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss, but that requires "what makes the claims inventive" to be "recited by the claims," and it was not here. *Cellspin*, 927 F.3d at 1317. "No amendment to a complaint can alter what a patent itself states." *Sanderling*, 65 F.4th at 706. As observed in the prior order and explained at greater length in this order,

4

1    there is (still) a mismatch between what was broadly claimed by the five asserted patents and
2    what the specifications and Splunk's (proposed amended) complaint *say* was claimed (*see* Dkt.
3    No. 55 at 15–16). Because the alleged improvements have not been captured in the claim
4    language, the validity of the claims does not turn on the factual question of whether the alleged
5    improvements are unconventional. The amended allegations, taken as true, do not prevent
6    resolution of this action's patent-eligibility disputes.[2]

7    Consider the '206 patent, entitled "Selecting Parsing Rules Based on Data Analysis." It
8    describes a method for previewing the application of a parsing rule on a selection of raw data
9    in a graphical user interface and, in response to user input, processing a broader selection of
10   raw data with that parsing rule to create searchable, time-stamped events, "wherein the method
11   is performed by one or more computing devices" ('206 patent 20:45–67). The proposed
12   amended complaint provides historical context on search engine indexing to further support
13   arguments Splunk had made previously about the problem of "polluting" an index store if
14   events are not "well-defined" that the claimed invention ostensibly solved (*see* PAC ¶¶ 127–
15   31). None of the claims recite a mechanism for ensuring events are well-defined, however. It
16   is the *user* who decides if the rule should be applied based on the preview.

17   Recognizing this, Splunk now alleges that the claims are directed to software that
18   "employs a non-conventional technique wherein index data is generated *before and separately*
19   *from* that data being stored in an index" (PAC ¶ 129; *see* Br. 16 (quoting PAC ¶¶ 129, 131)).
20   But the claims themselves do not even mention index data, let alone differentiate its generation
21   and storage. Elsewhere, Splunk contends that "[t]he graphical user interface contemplated by
22   these claims represents an important advance over conventional technology" and facilitates the
23   user's data analysis decision-making (PAC ¶ 132; *see* Br. 17 (citing PAC ¶ 132); PAC ¶¶ 133–
24   34). Yet the Federal Circuit has made clear that the mere addition of a graphical user interface
25   does not transform an abstract idea (like previewing a data analysis rule before applying it) into

---

[2] One instance in which allegations can prevent resolution of patent-eligibility disputes is when a patent owner alleges that claim construction is required before patent eligibility can be assessed. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016). Counsel confirmed at the hearing that Splunk is not alleging this (Tr. 19:18–24).

a patent-eligible application. "Automation or digitization of a conventional method of organizing human activity . . . does not bring the claims out of the realm of abstractness." *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022).

The '443 patent, entitled "Transformation of Network Data at Remote Capture Agents," describes a method for a remote data capture agent to obtain configuration data, monitor network data comprised of network packets, and generate and transform at least one network packet into time-stamped event data based on the obtained configuration data ('443 patent 26:28–49). The '438 patent, entitled "Configuring the Protocol-Based Generation of Event Streams by Remote Capture Agents," describes a method for such an agent to generate an event data stream based on the network data it monitors in accordance with the configuration data it received identifying a protocol and associated event attribute ('438 patent 24:26–45). The prior order took these patents up together because Splunk took them up together (Dkt. No. 55 at 16 (citing MTD Opp. 6–7, 13–17)). Although Splunk offers amended allegations to differentiate the claimed technology from conventional technology, the alleged improvements are not captured in the claims themselves, which are directed to abstract data manipulation.[3]

Splunk now identifies "configuration information" as "[a]t the core" of the claims' advances and emphasizes that the ability of the configuration information to be "changed at any time," "user-modifiable," and adjusted "during runtime" reflects improvement in network capture technology (Br. 6–8, 12–15 (quoting PAC ¶¶ 101, 118, 123)). The claims themselves, however, do not call for this dynamic reconfiguration.[4] As the prior order explained, the '443 patent simply describes monitoring (network) data and applying (configuration) data received to generate and transform (event) data. Meanwhile, the '438 patent simply describes generating (event) data by applying (configuration) data received to (network) data monitored.

---

[3] The prior order said remote capture agents "can *be* physical hardware servers or virtual machines running in the cloud" when it should have said remote capture agents "may *be installed* on a physical server and/or in a virtual computing environment" (Dkt. No. 55 at 17 (quoting '438 patent 4:65–5:2); '438 patent 7:48–49) (emphases added). This does not affect any analysis, however.

[4] Meanwhile, another asserted patent, entitled "Dynamically Instantiating Dual-Queue Systems," claims "dynamically instantiating [a] dual-queue node" ('467 patent 24:36–37).

What's more, specification language provides that "most" (not all) conventional network capture technologies operate in a fixed manner, and "generally" (not always) cannot be dynamically or easily modified ('443 patent 6:60–64). In other words, the patent itself betrays that this is not the claimed invention.

Hedging, Splunk points to other purported inventive concepts. For the '443 patent, it focuses on the transformation of data at the remote capture agent, which "constitutes a further technical advance" and ostensibly enables a more efficient, flexible usage of network resources and a reduction of network traffic (PAC ¶¶ 105–06; *see* Br. 7 (citing PAC ¶¶ 104–06)). But the only usage of network resources and reduction of network traffic *claimed* is that which occurs as a result of transmitting event data in lieu of network packets, and the specification makes clear that this was not itself unconventional (*see* '443 patent 1:37–41). For the '438 patent, Splunk again highlights the addition of a graphical user interface, which facilitates "further configurability improvements" (Br. 12–14 (citing PAC ¶ 119)). This order has already explained that the addition of such an interface is alone insufficient to transform an abstract idea into a patent-eligible application. *See Weisner*, 51 F.4th at 1083. "[N]othing in the patent contains any suggestion that the displays needed for th[is] purpose are anything but readily available." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).[5]

The '312 patent, entitled "Time Stamp Creation for Event Data," describes a method for creating a set of time-searchable events by segmenting machine data into event data and associating that data with a given time stamp, "wherein the method is performed by one or more computing devices" ('312 patent 17:9–48). The proposed amended complaint alleges that "challenges stood in the way of building an index for a true 'time series search engine' for raw time series machine data," which "would require the ability to index arbitrary sets of machine data, ranging from server logs to network packets to sensor data" (Br. 20 (quoting

---

[5] Splunk attached to its motion a presentation that it alleges CEO Sharp prepared and that "confirms that [the claimed technology] was neither routine nor conventional" (Br. 4, 9–11, Exh. Q). It incorporated this presentation into its proposed amended complaint (PAC ¶¶ 107–12). Again, because the alleged improvements have not been captured in the claim language, this does not move the needle.

7

PAC ¶ 154)). In other words, "data from these heterogeneous sources needed to be homogenized" (*ibid*.). Yet no such improvement is captured by the claim language. All that is claimed is creating time-searchable events by determining whether time information is available in segmented machine data, using time information from earlier processed events as a proxy if time information is unavailable, and doing this on a computer. *Cf. Alice*, 573 U.S. at 223. The proposed amended complaint states that the claims provide "a technique to facilitate indexing raw time-series machine data regardless of its format or the presence of time information within that data," but no such technique is provided (PAC ¶ 158). The claims do not even disclose how to calculate a time stamp when time information is unavailable.

Splunk now contends that the claims "set forth a particular algorithm" (Br. 20 (quoting PAC ¶ 158; *see* PAC ¶¶ 154, 158–62)). Calling this an algorithm does not make it any less abstract, however. Moreover, Splunk avers that the claims "create searchable events *suitable* to create an index for a time-based machine data search engine" and recite techniques "by which the index that underpins such a search engine *could be* created" (Br. 20 (quoting PAC ¶¶ 158, 163)) (emphasis added). As noted by Cribl and CEO Sharp, however, "tortuously alleging an 'improvement' that is, at best, two steps removed from the claim language only highlights the disconnect between the claimed invention and Splunk's purported advance" (Opp. 13). The Section "101 inquiry must focus on the language of the Asserted Claims themselves." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

Finally, the '467 patent, entitled "Dynamically Instantiating Dual-Queue Systems," describes a method for routing live data to a dual-queue node that, upon dynamic instantiation, initializes a live data queue and a stale data queue, wherein the live data queue receives live data for processing and the stale data queue stores a persistent backup ('467 patent 24:31–43). The proposed amended complaint asserts that the claimed invention prevents the "over-instantiation" of (pre-existing) dual-queue nodes, instantiating them "only when needed" (PAC ¶ 147; *see* Br. 21 (citing PAC ¶¶ 137–39)). But all that is claimed is the dynamic instantiation of a dual-queue node, with no limit on the number of instantiated dual-queue nodes and no detail on why a dual-queue node may (or may not) be instantiated.

8

1    According to Splunk, the proposed amended complaint "adds supplemental allegations to
2    clarify that the claims are not directed to 'handling overflow traffic,' but instead are directed to
3    how to efficiently manage dual-queue data structures in a computer system that are used to
4    handle such traffic" (Br. 22 (quoting PAC ¶ 148)). Yet the claims do not disclose a solution to
5    the management problem identified in the specification (and Splunk's original complaint) —
6    that of avoiding lost data when incoming live data arrives too quickly — beyond standard
7    caching and storing. Acknowledging the claimed invention relates to caching and storing,
8    Splunk now emphasizes that the claims "focus on problems associated with providing dual-
9    queue systems to many tenants" based on scalability and affordability (Br. 23 (citing PAC
10   ¶ 139); *see* PAC ¶¶ 138–39, 141–42). A concrete solution to those multi-tenant problems,
11   however, is not captured in the claim language, which merely "implement[s] a multi-tenant
12   dual-queue system" ('467 patent 24:31–32).

\*     \*     \*

The Federal Circuit has recognized that "the specification cannot be used to import details from the specification if those details are not claimed. Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769. Likewise, the Federal Circuit has recognized that a complaint cannot be used to import details from the specification or elsewhere if those details are not claimed. *Cellspin*, 927 F.3d at 1317. Otherwise, a carefully drafted complaint could always push patent-eligibility disputes to summary judgment or trial, which would delay invalidation and waste considerable resources.

During the hearing, counsel for Splunk stated that "[w]hat *Cellspin* is about is you don't have to look at the patent, itself, to determine if it's unconventional or not" and that "in fact, prosecutors are trained not to be too specific about what's new here, to leave some room in litigation" (Tr. 23:13–17). That patent prosecutors draft broadly for a strategic advantage may be true, albeit lamentable, but this order should draw into relief the risk they run in doing so. Patents must specifically claim what they invent. Splunk reaped what it sowed.

9

Accordingly, Splunk's amended allegations do not preclude dismissal of its direct patent infringement claims, and amendment of Splunk's complaint would be futile. Because the patent claims remain ineligible, this order does not reach Splunk's new arguments with respect to willful and indirect infringement.[6]

## CONCLUSION

For the foregoing reasons, Splunk's motion for leave to file an amended complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 23, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[6] Suffice to say, the undersigned is opposed to the idea that Cribl became knowledgeable of the asserted patents and their infringement on account of the complaint that Splunk filed in the District of Delaware before it refiled in this district. Splunk recognizes that the parties agreed upon dismissal and refiling to conserve resources (Br. 2). Surely Cribl never would have agreed to this had it known that this would impute knowledge.