1   Frank E. Scherkenbach (CA SBN 142549)
    scherkenbach@fr.com
2   Andrew G. Pearson (*Pro Hac Vice*)
    pearson@fr.com
3   Adam Kessel (*Pro Hac Vice*)
    kessel@fr.com
4   Kevin Su (*Pro Hac Vice*)
    su@fr.com
5   Kayleigh E. McGlynn (*Pro Hac Vice*)
    mcglynn@fr.com
6   Daniel H. Wade (*Pro Hac Vice*)
    wade@fr.com
7   FISH & RICHARDSON P.C.
    One Marina Park Drive
8   Boston, MA 02210
    Telephone: (617) 542-5070
9   Facsimile: (617) 542-8906

10  Olivia T. Nguyen (CA SBN 337927)
    onguyen@fr.com
11  FISH & RICHARDSON P.C.
    500 Arguello Street, Suite 400
12  Redwood City, CA 94063
    Telephone: (650) 839-5070
    Facsimile: (650) 839-5071

13
14  *Attorneys for Plaintiff and Counter-Defendant*
    *Splunk Inc..*

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Tigran Guledjian (Bar No. 207613)
  tigranguledjian@quinnemanuel.com
  Christopher A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendant and Counterclaimant*
*Cribl, Inc. and Defendant Clint Sharp*

15                **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17                 **SAN FRANCISCO DIVISION**

18  SPLUNK INC.,                               )
                                               )
19           Plaintiff,                        )   Case Number: 3:22-cv-07611-WHA
                                               )
20      v.                                     )   **STIPULATED PROTOCOL AND**
                                               )   **[PROPOSED] ORDER GOVERNING**
21  CRIBL, INC., and CLINT SHARP, an           )   **DISCOVERY MATTERS RELATING TO**
    individual,                                )   **ELECTRONICALLY STORED**
22                                             )   **INFORMATION**
           Defendants.                         )
23                                             )   **JURY TRIAL DEMANDED**
    CRIBL, INC.                                )
24                                             )
           Counterclaimant.                    )
25                                             )
                                               )
26      vs.                                    )
                                               )
27  SPLUNK INC.,                               )
           Counter-Defendant.                  )
28  _____        )

**STIPULATED PROTOCOL AND [PROPOSED] ORDER GOVERNING DISCOVERY MATTERS RE: ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Plaintiff and Counter-Defendant Splunk Inc. ("Splunk"), Defendant and Counterclaimant Cribl, Inc. ("Cribl") and Defendant Clint Sharp ("Mr. Sharp") (collectively, "Defendants," and, with Splunk, the "Parties"), by and through their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol and [Proposed] Order Governing Discovery Matters Relating To Electronically Stored Information ("ESI Protocol").

## I.   **Purpose**

1.      This ESI Protocol supplements all other discovery rules and orders. It streamlines the production of electronically stored information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

2.      This ESI Protocol may be modified in the Court's discretion or by written stipulation of the Parties.  (For purposes of this ESI Protocol, confirming emails manifesting agreements by the Parties are sufficient to constitute a written stipulation of the Parties.)

3.      As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Rule 26 of the Federal Rules of Civil Procedure.

4.      The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines").[1]  Where there is a conflict, this ESI Protocol shall control.

5.      This ESI Protocol shall govern the production of documents and ESI by the Parties in the above-captioned litigation.  Nothing herein shall enlarge or affect the proper scope of discovery, nor shall anything herein imply that any documents or ESI collected or produced under the terms of this ESI Protocol are properly discoverable, relevant, or admissible in the litigation.

6.      The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the Party issuing the subpoena and the

---

[1]   *Available at* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.

third party.  Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action after Court approval of the ESI Protocol.

**II.**     **General Definitions**

7.     As used herein, the following terms shall have the following meanings:

(a)     The terms "Electronically Stored Information" and "ESI" as used herein have the same meaning as contemplated by the Federal Rules of Civil Procedure.  *See, e.g.*, Fed. R. Civ. P. 34, advisory committee's note to 2006 amendments (cautioning against any "limiting or precise definition" of ESI; Rule 34(a)(1) "is expansive and includes any type of information that is stored electronically" and "is intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and developments").

(b)     "Native file format" means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities;

(c)     "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system;

(d)     "Document" or "Documents" are used in their broadest sense, to the full extent permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure.

### III.     Types of ESI

8.     For purposes of identifying and describing the Parties' obligations and applicable procedures with respect to ESI, this ESI Protocol divides ESI into two categories: non-custodial ESI and custodial ESI.

9.     **Non-custodial ESI.** Non-custodial ESI refers to ESI that is typically stored in a central corporate repository.  Examples of documents that are typically non-custodial ESI include: financial records; technical documentation; engineering documentation; sales and marketing materials; wikis; websites; patents, copyright registrations, trademark registrations, and related prosecution files; investor relations materials; exports from multi-user programs and databases (*e.g.*, Jira); and other files that are typically maintained at a corporate, organization- or department-level.[2]

10.     **Custodial ESI.** Custodial ESI refers to ESI that is typically associated with individual custodians, including both electronic communications (*e.g.*, emails, instant messages, etc.) and individual document repositories or storage (including cloud-based repositories and storage) with the exception of corporate documents (*e.g.*, a corporate memorandum that is stored only on an individual employee's cloud storage account).  If a responding party learns of or locates a corporate document in an individual's custodial repository (e.g., if corporate marketing records are maintained on an individual employee's corporate Google Drive account), the responding party shall not withhold or fail to collect the document due to its storage location.  Otherwise, requests for custodial ESI are dictated by the procedures set forth in Section VI(A), *infra*.

### IV.     Sources of ESI

11.     The Parties hereby identify the following sources of potentially relevant ESI (whether custodial or non-custodial) that are, subject to Paragraph 47, *infra*, presumptively reasonably available to the Parties:

> (a)     As to Splunk: Google Workspace (including, *e.g.*, Drive, Mail, Vault, and Calendar), git (provided via GitLab or BitBucket), Salesforce, Confluence, Jira, SAP, Slack, Workday, Apptus, Conga.

---

[2]   The examples included herein are purely illustrative and neither exhaustive nor determinative.

(b) As to Cribl: Google Drive, Google Mail, Google Vault, git, Confluence, Jira, Salesforce, Slack, Netsuite, Greenhouse, Google workspace Calendar, Lattice, Looker, Bitbucket, Ironclad.

(c) As to Clint Sharp: Through his employment at Cribl, Mr. Sharp may have relevant ESI in the above-referenced Cribl ESI sources; Dropbox.

Should a Party become aware of additional, reasonably available sources of potentially relevant ESI, the Party must disclose it and confer concerning appropriate additional searches thereof.

**V. Procedures and Obligations with Respect to Non-Custodial ESI**

12. All Requests for Production ("Requests") served in this action are deemed to seek responsive <u>non-custodial</u> ESI (in addition to non-ESI documents).

13. With respect to non-custodial ESI, in responding to a Request seeking "all" documents and/or "all" communications,[3] a responding Party is obligated to make a reasonable inquiry and diligent search of reasonably accessible non-custodial ESI sources to locate and identify responsive documents.

**VI. Procedures and Obligations with Respect to Custodial ESI**

**A. Procedures for Requesting and Producing Custodial ESI**

14. Each requesting side is limited to thirty (30) search terms (with wildcards and standard search operators) per custodian.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The parties may jointly agree to modify this limit without the Court's leave and, following good-faith meet-and-confer efforts, may request relief from this limit from the Court if they are unable to resolve any dispute.

15. For purposes of counting the number of search terms, a conjunctive combination of multiple words or phrases (*e.g.*, "computer" AND "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer"

---

[3] To the extent the precise wording identified in this ESI Protocol is not utilized in a Request, the Parties agree that the ESI Protocol should be interpreted to apply to other similar formulations to effect its purpose.

OR "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word, phrase, or concept.  The Parties will apply these principles to more complex strings.  Use of narrowing search criteria (*e.g.*, "AND," "BUT NOT," "w/x") is encouraged to limit the production.

16.     Indiscriminate search terms, such as the responding Party's name or a product name, are generally inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.

17.     A search string for an individual custodian returning ≤1,000 results, or "hits," is presumptively reasonable.  A search string returning >1,000 results, or "hits" is not presumptively reasonable and may require narrowing pursuant to Paragraph 19, *infra*.

18.     For purposes of this ESI Protocol, a "hit" is any Document that is identified using the search parameters for a given Request for custodial ESI.  "Hit counts" include only such Documents identified by the operative search parameters and do not include family members that are not independently identified by the operative search parameters.  For example, if an email has six attachments, and the email and one attachment are "hits" identified using the search parameters, it counts as two "hits" (not seven) toward any hit count.  For instant messages (*e.g.*, Slack), each 24-hour period shall count as one "hit."

19.     To the extent the responding Party objects that a search string is unduly burdensome or overbroad, the responding Party shall further identify the hit counts broken down by the requested custodians and search terms.  The Parties shall then meet and confer regarding modifications to the search terms, custodians, sources, and time frames to arrive at an appropriately tailored search.  If, following a good faith meet and confer, the Parties cannot arrive at an agreement regarding custodians, search terms, sources and time frames for a Request for custodial ESI, a Party may seek relief from the Court.

20.     In any event, a responding Party shall provide a hit count for each search string proposed by a requesting party in advance of finalizing the requested custodial ESI searches to permit the requesting Party to adjust its requested search terms.

21.     Responding Parties shall produce all responsive non-privileged Documents that are identified using custodian and search term searches.  Clearly non-responsive Documents identified using custodian and search term searches do not have to be produced.

### B.     Limitations on Custodians and Global Hit Counts

22.     **Presumptive Limitation on Custodians.**     Each requesting side shall presumptively limit its requests for custodial ESI to a total of ten custodians ("Regular Custodians") per side across all of its Requests for Production.  The Parties acknowledge that entry of this ESI protocol is not intended to resolve the Parties' ongoing negotiation and disputes regarding discovery of custodial ESI related to former Splunk employees hired by Cribl.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court may consider contested requests for additional Regular Custodians upon showing a distinct need based on the size, complexity, facts, and issues of this specific case.

23.     **Ceiling.**  The Parties agree that there is a rebuttable presumption that no side shall be required to review more than 100,000 "hits" (as defined in Paragraph 18, *supra*) identified by all of the other side's custodial ESI requests (combined).

24.     To allow the requesting Party to adjust its Requests in light of the presumptive ceiling on documents to be reviewed, a requesting Party may, within ten (10) days of receiving a responding Party's responses identifying hit counts, request a meet and confer to further narrow its originally-requested search parameters.

25.     **Floor.**  The Parties further agree that, if a requesting side's custodian and search term "hits"—across all requested custodians—yield less than 25,000 "hits," the requesting side is presumptively entitled (at its discretion) to supplement its search parameters to exceed the presumptive ten Regular Custodian limit described in Paragraph 22 or the thirty search term limit in Paragraph 14, *supra*, until the floor is reached.

26.     Should a requesting Party discover that the responding Party failed to identify a reasonably available source of ESI in Paragraph 11, *supra*, or failed to search it in accordance with the terms of this ESI Protocol, the responding Party shall be entitled to obtain non-privileged documents in that source, applying the search terms previously requested by the requesting Party.

**C.**     **Procedures for Making and Responding to "Special Custodial ESI" Requests**

27.     To the extent the requesting Party seeks custodial ESI but contends it either (i) lacks information to identify relevant custodians or (ii) believes that the documents and communications reside with custodian(s) who present(s) special concerns (*e.g.*, one or more attorney(s), who present privilege concerns, or a custodian with little or no relevance to the claims and defenses in the case, but who is nonetheless the relevant custodian for a particular type of document or communication) it shall so indicate in the Request for Production, *e.g.*, by serving separate requests that are labeled as "Special Custodial ESI" requests (or, if served prior to the entry of this ESI Protocol, designating them as "Special Custodian ESI" requests in a writing to the responding party).

28.     A requesting side may request such special custodial ESI for up to fifteen (15) Requests across all of its requests in the action.  A Party making such a Request for special custodial ESI may include any information available to it to assist the responding Party in formulating its response (*e.g.*, in the case of a custodian who presents special concerns, the identity of the custodian).  To the extent a requesting Party believes that it needs more such "special custodial ESI" Requests, the Parties shall meet and confer in good faith and attempt to reach an agreement and, if unsuccessful, a Party may seek relief from the Court.

29.     In responding to a Request for special custodial ESI, the responding Party may, but is not required to, use reasonable search terms to search for and identify responsive documents among a special custodian's ESI.

30.     The Parties agree that the procedures in this Section VI.C are not intended to be used to require intentionally the ingestion, collection, and review of documents from large categories of custodians.  For example, a request that on its face seeks communications that would be reasonably expected to be made by *all* salespeople or *all* product engineers is not likely to be an appropriate special custodial ESI request.  To the extent a responding Party objects that a Request for special custodial ESI is unduly burdensome or overbroad, the Parties shall meet and confer regarding modifications to the custodians, sources, and time frames to arrive at an appropriately tailored search.  If, following a good faith meet and confer, the Parties cannot arrive

at an agreement regarding custodians, sources, and time frames for a Request for special custodial ESI, a Party may seek relief from the Court.

### D. Previously-Served Requests for Production

31.    The Parties acknowledge that they have each served Requests for Production including Requests for Production that seek ESI, prior to reaching agreement on this ESI Protocol. The Parties agree that each Party may revisit their prior Requests to designate certain Requests as seeking special custodial ESI pursuant to the terms of this ESI Protocol.  (All other previously-served Requests shall be deemed requests for non-ESI and non-custodial ESI and subject to the respective terms of this ESI Protocol; however, Paragraphs 10, *supra*, and 33, *infra*, apply with equal effect to all Requests.)  Unless extended by written agreement of the Parties, the Parties shall make these designations in writing within fourteen (14) days of the entry of this ESI Protocol by the Court.  The Parties may comply with this provision by providing written correspondence identifying the Requests for which the Party seeks special custodial ESI and, for each such Request, the information provided in Section VI.C, *supra*.

32.    The Parties acknowledge and agree that objections based on burden and overbreadth to previously-served Requests should be reevaluated in light of the procedures in this ESI Protocol.

### VII.    Effect of ESI Protocol on Discovery Obligations

33.    Nothing in this ESI Protocol relieves a Party of its obligations under the Federal Rules of Civil Procedure to produce responsive, relevant ESI.  Should a responding Party be or become aware of responsive, relevant ESI (whether non-custodial or custodial), it may not withhold production or logging of such ESI simply because the parties' agreed search terms and custodians do not capture such, or its production is not otherwise required by this ESI Protocol.[4]

34.    The typed or handwritten signature of a Party's counsel on correspondence

---

[4]  For purposes of this Paragraph 33, the Parties acknowledge that individual employees of a Party may be aware of documents that are responsive to a Request for Production but, despite a reasonable and diligent inquiry, the Party may not identify this employee's knowledge or the responsive documents.  If and when the existence of such specific responsive, non-privileged documents comes to the responding Party's attention, the responding Party shall produce them.

1    described herein shall be deemed an attorney signature pursuant to Rule 11 of the Federal Rules

2    of Civil Procedure.

3    **VIII.**   **Technical Requirements for Electronic Production of Paper Documents and ESI**

4       **A.**   **Technical Requirements for Production of Paper Records**

5       35.   Paper records shall be scanned or otherwise converted into electronic form from

6    paper documents in the following format:

   (a)   TIFFs.  All documents shall be scanned to single page Group 4, TIFF
         format, at least 300 dpi and 8.5 x 11 inch page size, except for documents
         requiring higher resolution or different page size.  Each image file should
         have a unique file name which shall be the Bates number of the page.

   (b)   In scanning paper documents, distinct documents should not be merged into
         a single record, and single documents should not be split into multiple
         records (*i.e.*, paper documents should be logically unitized).  The Parties
         shall make their best efforts to have their vendors unitize documents
         correctly and shall commit to address situations where there are improperly
         unitized documents.

   (c)   Objective Coding Fields.  The following objective coding fields should be
         provided, if applicable and/or available: (1) beginning Bates number;
         (2) ending Bates number; (3) beginning attachment Bates number;
         (4) ending attachment Bates number; and (5) source location/custodian.

   (d)   Searchable Text shall be created using optical character recognition
         ("OCR").

      **B.**   **Technical Requirements for Production of ESI**

       36.   The Parties shall produce ESI in TIFF format according to the following
   specifications:

   (a)   All TIFF formatted documents shall be single page, Group 4 TIFF at 300 X
         300 dpi resolution and 8.5 x 11 inch page size, except for documents
         requiring a different resolution or page size.

(b)   An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, shall accompany all document images.

(c)   Each imaged version of an electronic document shall be created directly from the original electronic document.

(d)   Color documents (*e.g.*, color photographs or graphical representations in color) may be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth herein.  Upon a reasonable request by the receiving Party, the producing Party shall produce specifically identified documents in color.  If color images are required to render the document legible and usable, the files shall be delivered in single page, JPEG format, accompanied by the requisite document level text file as specified herein.

(e)   Full extracted text shall be provided in the format of a single TXT file for each file (*i.e.*, not one TXT per TIFF image).  Original extracted text shall not be provided for electronic documents that have been redacted.  Instead, for documents with redacted images, a separate OCR text file should be created for each redacted document that displays only the unredacted text. Any such redactions shall be clearly marked on the document (*e.g.*, with a solid, black box labeled with a legend such as "Redacted for Privilege"). For documents redacted natively the producing party shall provide OCR or extracted text after the redactions have been applied.  Searchable text or OCR text shall be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the DAT data load file.

37.   The Parties shall meet and confer regarding any good faith and reasonable requests for version histories of any document and/or additional metadata (*e.g.*, document owner, visibility settings, sharing permissions, revision history, comments, or tags) where a document originated as

a Google Doc or document from another online document management system where that metadata is necessary to understand the revision history of the document, to the extent reasonably practicable and available.

38.     The parties may produce the following ESI types in native file format and shall produce them in native format upon request of the requesting Party:

- Spreadsheets (*e.g.*, csv, ods, xls, xlsx, numbers, etc.)
- Presentations (*e.g.*, odp, ppt, pptx, key, etc.)
- Audio/video files

39.     The Parties shall meet and confer regarding any good faith and reasonable requests for the production of other ESI types in native file format.

40.     **Attachments to emails.**

(a)     The Parties shall collect and produce files attached to emails.

(b)     The Parties shall meet and confer regarding any good faith and reasonable requests for production of hyperlinked documents or modern attachments where the target document is within Google Suite (*i.e.*, Google docs, sheets, slides, etc.), to the extent reasonably practicable and available.  Where applicable, the Parties shall make best efforts to obtain and produce the version of the document that existed at the relevant time, to the extent reasonably practicable and available.

(c)     Nothing in this section shall restrict the Parties' ability to provide placeholder images for attachments validly withheld in accordance with the terms of this ESI Protocol and any operative Protective Order.

(d)     The Parties shall meet and confer regarding any good faith and reasonable requests for production of non-Google hyperlinked documents or modern attachments (*e.g.*, Confluence, Jira tickets, Atlassian Suite, etc.), to the extent reasonably practicable and available.

41.     **Production of Files in Native Format.**  Any document produced in native format shall be produced according to the following specifications, to the extent reasonably practicable

and available:

    (a)    A unique document number shall be used as the file name.  The original file name and extension shall be preserved in the corresponding load file.  An example of this convention would be: "CH00000001.xlsx" with metadata in the load file listing the original filename and extension as "Copyright data.xlsx."

    (b)    Any file produced in native format need not be imaged.  Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file and, where pertinent, the confidentiality designation.

42.    **Load/Utilization Files.**  There shall be two Load/Unitization files accompanying all productions.  One shall be the Image load file and the other shall be the Metadata load file.

43.    **Image Load File.**

    (a)    The name of the image load file shall mirror the name of the delivery volume, and should have a .lfp, .opt or .dii extension (*e.g.*, ABC001.lfp).  The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.)  *If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.*

    (b)    The image load file shall contain one row per TIFF image.

    (c)    Every image in the delivery volume shall be referenced in the image load file.

    (d)    The image key shall be named the same as the Bates number of the page.  Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.).  A separate volume shall be created for each piece of media delivered.

    (e)    Emails shall be produced with the CC and BCC line displayed in the image.

44.    **Metadata Load File.**  The following metadata fields associated with each electronic document shall be produced, to the extent reasonably practicable and available.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| AllCustodians[5] | Name of all custodians who had a copy of a document. | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | |
| AttachCount | Number of attachments to an email | X | |
| AttachName | Name of each individual attachment | X | |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient field extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| Email Subject | Subject line extracted from an email message | X | |
| Filename | File name — Original name of | | X |

---

[5]   Upon request, the Parties shall provide AllCustodians field based on documents received at the time of the production.  When the Parties' productions are completed, the producing Party shall provide an overlay for previously produced documents containing all additional custodians whose documents have been added after the time of the initial production.

STIPULATED PROTOCOL AND ORDER GOVERNING DISCOVERY RE: ESI
CASE NO. 3:22-CV-07611-WHA

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| | file as appeared in original location | | |
| Title | Title field extracted from the metadata of a non-email document | | X |
| DateTimeSent | Sent date and time of an email message (mm/dd/yyyy HH:MM format) | X | |
| DateTimeRcvd | Received date and time of an email message (mm/dd/yyyy HH:MM format) | X | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateMod | The application recorded time on which the document was last modified | | X |
| NativeLink (if natives are exchanged) | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| Confidential | Confidentiality Designation | X | X |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| FileExtension | File extension of native file | X | X |

45.   **Instant Messages (*e.g.*, Slack) Data.**

   (a)   The Parties shall produce instant messages (including, but not limited to, Slack communications) in documents separated by 24-hour days.  A Party may request instant messages from the prior or following day where it believes additional context is necessary.

(b)     A Party may request the production of hyperlinked documents within responsive portions of instant messages, which shall not be unreasonably withheld.

(c)     Where available based on the resources used in a producing Party's regular course of business, the producing Party shall include the following fields. To the extent a Party does not have existing access to the information identified by any particular field, the Parties may meet and confer to discuss whether there are any custom fields or other metadata that may be available through third-party tools or integrations that should be included, to the extent reasonably practical and available.

| Field Name | Field Description |
| --- | --- |
| Timestamp | The date and time when a message was sent |
| Author | The user who sent the message or uploaded the file. |
| Participants | Users in conversation |
| Channel/Group/DM Name | The name of the channel, group or direct message in which the message was sent or file was uploaded. |
| Channel/Group/DM ID | The unique identifier for the channel, group or direct message in which the message was sent or file was uploaded. |
| Message ID | The unique identifier for the message. |
| Message Type | The type of message, such as a standard message, a thread reply, a bot message, or a message with an attached file. |
| NumMessages | Number of messages |
| Edited | A Boolean flag indicating whether the message was edited after it was originally sent. |
| Edited Timestamp | The date and time when the message was last edited. |
| Deleted | A Boolean flag indicating whether the message was deleted. |
| Has Attachments | Indicates where there are attachments present |

| Field Name | Field Description |
|---|---|
|  | in the thread |
| NumAttach | Number of Attachments |
| Attachment Name | File name (for attachments) |
| Reactions | Indicates where there are reactions to a message in the thread |

### C.      Resolution of Technical/Logistical Issues

46.     Documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting Party; the Parties shall then meet and confer to attempt to resolve the problems.

47.     If a producing Party asserts that certain ESI is inaccessible or cannot be produced in an appropriate format, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer in good faith with their respective technology experts to discuss resolving such assertions.  If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue may be presented to the Court for resolution.

### D.      Databases, Structured, Aggregated or Application Data

48.     For Requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties shall use reasonable best efforts to produce the data and shall meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

### E.      Redaction of Documents

49.     The producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity, or that is governed by other applicable privacy law or regulation, following the procedures set forth in Paragraph 36(e), *supra*.  The foregoing does not affect the Parties' obligations under Rule 26(b)(5) of the Federal Rules of Civil Procedure.

1  **F.      Data Load Files/Cross-Reference Files**

2      50.      Fielded data should be exchanged via a document-level database load file in

3  standard Concordance (DAT) format.  All image data should be delivered with a corresponding

4  image load file in one of three formats: standard IPro (LFP), Opticon (OPT) or Summation (DII).

5  **G.      Parent-Child Relationships**

6      51.      Parent-child relationships (the association between an attachment and its parent

7  Document or between embedded Documents and their parent) shall be preserved through the

8  production of an appropriate Metadata field.  Parent-child relationships shall also be preserved

9  through the sequential production of the documents, such that the parent shall be produced first,

10  immediately followed by the corresponding attachments.

11  **H.      Family Groups**

12      52.      A Document and all other Documents in its attachment range, emails with

13  attachments and files with extracted embedded OLE Documents all constitute family groups.  If

14  any member of a family group is determined to be responsive to a Party's document requests, then

15  all members of that group must also be considered as responsive.

16  **I.      Deduplication of Documents**

17      53.      The Parties shall de-duplicate globally (*i.e.*, across all custodians). This will result

18  in the Producing Party needing to produce only a single copy of responsive ESI. The Parties shall

19  de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-

20  level email documents against top-level email documents.  De-duplication shall not break apart

21  families.  Where a stand-alone document or top-level email is found in more than one custodian's

22  files, the metadata load file shall list all such custodians, even though the document or email is

23  being produced only once.

24  **J.      Privilege Logs**

25      54.      The Parties shall not be required to log privileged documents created, and

26  communications occurring, on or after November 2, 2021.  This cut-off date is based on the start

27  of pre-suit communications between the Parties.  The Parties agree there should be a presumption

28  that information concerning documents or things otherwise protected by the attorney-client

privilege, work product immunity, or other privilege or protection ("Privileged Materials") that were created after the cut-off date do not need to be included on any privilege log.  However, the Parties reserve the right to request (and seek a Court order compelling if necessary) logs of Privileged Materials created after November 2, 2021 upon a showing of good cause.  *See* ECF No. 43 at 6:7-16.

**K.**    **Source Code**

55.    No provision of this ESI Protocol affects the inspection or production of source code which shall be collected and made available consistent with the Protective Order governing this case.

1   Dated:  August 22, 2023        /s/ Andrew G. Pearson
                                   FISH & RICHARDSON, P.C.
2                                  Andrew G. Pearson
                                   *Attorneys for Plaintiff and Counter-Defendant*
3                                  *Splunk Inc.*

4

5

6   Dated:  August 22, 2023        /s/ Tigran Guledjian
                                   QUINN EMANUEL URQUHART & SULLIVAN, LLP
7                                  Tigran Guledjian
                                   *Attorneys for Defendant and Counterclaimant*
8                                  *Cribl, Inc. and Defendant Clint Sharp*

9

10   **STIPULATED PROTOCOL AND ORDER GOVERNING DISCOVERY MATTERS**

11   **RELATING TO ELECTRONICALLY STORED INFORMATION**

12        The above STIPULATED PROTOCOL AND [PROPOSED] ORDER GOVERNING

13   DISCOVERY MATTERS RELATING TO ELECTRONICALLY STORED INFORMATION is

14   approved as the ESI Protocol for this case and all Parties shall comply with its provisions.

15

16   IT IS SO ORDERED.

17    Dated: August 24, 2023.

18                                 _____
                                   HON. WILLIAM H. ALSUP
19                                 UNITED STATES DISTRICT JUDGE

1

**SIGNATURE ATTESTATION**

2

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from

3

its other signatories.

4

Respectfully submitted on August 22, 2023.

5

6

By:   /s/ Andrew G. Pearson

Frank E. Scherkenbach (CA SBN 142549)

7

scherkenbach@fr.com
Andrew G. Pearson (Pro Hac Vice)

8

pearson@fr.com
Adam Kessel (Pro Hac Vice)

9

kessel@fr.com
Kevin Su (Pro Hac Vice)

10

su@fr.com
Kayleigh E. McGlynn (Pro Hac Vice)

11

mcglynn@fr.com
Daniel H. Wade (Pro Hac Vice)

12

wade@fr.com
FISH & RICHARDSON P.C.

13

One Marina Park Drive
Boston, MA 02210

14

Telephone: (617) 542-5070
Facsimile: (617) 542-8906

15

16

Olivia T. Nguyen (CA SBN 337927)

17

onguyen@fr.com
FISH & RICHARDSON P.C.

18

500 Arguello Street, Suite 400
Redwood City, CA 94063

19

Telephone: (650) 839-5070
Facsimile: (650) 839-5071

20

21

*Attorneys for Plaintiff and Counter-Defendant*
*Splunk Inc.*

22

23

24

25

26

27

28

STIPULATED PROTOCOL AND ORDER GOVERNING DISCOVERY RE: ESI
CASE NO. 3:22-CV-07611-WHA