QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Tigran Guledjian (Bar No. 207613)
  tigranguledjian@quinnemanuel.com
  Christopher A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
  Valerie Roddy (Bar No. 235163)
  valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendant and Counterclaimant Cribl, Inc. and Defendant Clint Sharp*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SPLUNK INC.,<br><br>            Plaintiff,<br><br>    vs.<br><br>CRIBL, INC., et al.,<br><br>            Defendants.<br><br>CRIBL, INC.<br><br>            Counterclaimant,<br><br>    vs.<br><br>SPLUNK INC.,<br><br>            Counter-Defendant. | Case No. 22-cv-07611-WHA<br><br>**DEFENDANTS' OPPOSITION TO SPLUNK'S MOTION FOR PARTIAL FINAL JUDGMENT OF COUNTS I-V PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(B)**<br><br>Judge:          The Hon. William H. Alsup<br>Hearing Date:   October 26, 2023<br>Hearing Time:   8:00 a.m.<br>Courtroom:      12, 19th Floor |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    ENTRY OF PARTIAL FINAL JUDGMENT WOULD NOT SERVE THE INTEREST OF "SOUND JUDICIAL ADMINISTRATION" OR EQUITY ....................... 2

    A.    Entry of Partial Final Judgment of Splunk's Patent Claims Just Months Before Trial Would Be an Inefficient Use of Judicial and Party Resources .............. 3

    B.    The Equities Weigh Against Entry of Partial Final Judgment .................................. 5

II.    IN THE EVENT THE COURT ENTERS PARTIAL FINAL JUDGMENT, IT SHOULD ALSO STAY THE REMAINDER OF THE CASE PENDING APPEAL .......... 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*23andMe Inc. v. Ancestry.com DNA, LLC*,
  No. 18-CV-02791-EMC, 2018 WL 5793473 (N.D. Cal. Nov. 2, 2018) .................................... 8

*Abbit v. ING USA Annuity*,
  No. CV-3:13-02310-GPC-WVG, 2017 WL 449149 (S.D. Cal. Feb. 2, 2017) ......................... 3

*Braswell Shipyards, Inc. v. Beazer E., Inc.*,
  2 F.3d 1331 (4th Cir. 1993) ..................................................................................................... 2

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ............................................................................................. 9, 10

*Curtiss-Wright Corp. v. Gen Elec. Co.*,
  446 U.S. 1 (1980) ................................................................................................................ 2, 3

*DaSilva v. Indiana*,
  30 F.4th 671 (7th Cir. 2022) ................................................................................................... 5

*In re: e.Digital Cases*,
  No. 12CV2698-DMS (WVG), 2014 WL 12516012 (S.D. Cal. Jan. 7, 2014) ......................... 9

*Hildes v. Andersen*,
  No. 08-CV-0008-BEN RBB, 2010 WL 4658742 (S.D. Cal. Nov. 8, 2010) ............................ 2

*iLor, LLC v. Google, Inc.*,
  550 F.3d 1067 (Fed. Cir. 2008) ............................................................................................... 5

*Indivior Inc. v. Dr. Reddy's Labs. S.A.*,
  No. CV 17-7105 KM CLW, 2020 WL 4932547 (D.N.J. Aug. 24, 2020) ............................... 2

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................................ 9

*Leyva v. Certified Grocers of California, Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ................................................................................................ 10

*Maxell, Ltd. v. VIZIO, Inc.*,
  No. CV 21-6758-GW-DFMX, 2022 WL 2167459 (C.D. Cal. May 13, 2022) .................... 4, 6

*Morrison-Knudsen Co. v. Archer*,
  655 F.2d 962 (9th Cir. 1981) ................................................................................................... 4

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ................................................................................................... 2

*Ortho-McNeil Pharm., Inc. v. Kali Labs., Inc.*,
  No. CIV A 02-5707 DMC, 2007 WL 1814080 (D.N.J. June 20, 2007) .................................. 2

*Sears, Roebuck & Co. v. Mackey*,
  351 U.S. 427 (1956) .................................................................................................................. 2

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  No. 14 C 08053, 2015 WL 12826473 (N.D. Ill. Nov. 10, 2015) ......................................... 6, 7

*Splunk Inc. v. Cribl, Inc.*,
  No. C 22-07611, 2023 WL 2562875 (N.D. Cal. Mar. 17, 2023) ............................................ 5

*U.S. Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.*,
  No. 1:07-CV-00718, 2009 WL 650578 (E.D. Cal. Mar. 12, 2009) ........................................ 3

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*,
  338 F.3d 1353 (Fed. Cir. 2003) .............................................................................................. 2

*W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs.*,
  975 F.2d 858 (Fed. Cir. 1992) ................................................................................................ 3

*Wood v. GCC Bend*,
  422 F.3d 873 (9th Cir. 2005) ......................................................................................... 3, 5, 6

**Statutes**

35 U.S.C. § 101 ............................................................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 1 .............................................................................................................................. 6

Fed R. Civ. P. 54(b) ............................................................................................................ 2, 3, 4, 5

**PRELIMINARY STATEMENT**

With part of its case dismissed based on patent ineligibility and amendment to re-plead denied on the ground of futility, Splunk now, more than two months later, asks the Court to take the exceptional step of granting final judgment as to some of its claims instead of waiting a few more months for final judgment on all of its claims, whether as a result of Cribl's pending motion for judgment on the pleadings, summary judgment motions, and/or the April 2024 trial in this case. Splunk elected to bring this intellectual property case against Defendants in a single lawsuit, which was appropriate because its claims involve the same parties, same software, and much of the same would-be deponents and evidence. By asserting software patents in this case, Splunk knowingly undertook a risk that the Court would invalidate them early in this single lawsuit. There is nothing inherently unjust about requiring Splunk to tolerate briefly a pre-trial decision on a subset of its claims; Splunk is no differently situated than any other plaintiff who suffers dismissal of some, but not all, of its claims at the pleading stage. Notably, Splunk fails to provide any compelling ground to fracture appellate review of this case into at least two separate proceedings, or any explanation for its delay in filing this motion. Permitting this late maneuver ensures that the defense of Splunk's appeal will overlap with the litigation of the parties' remaining claims in pre-trial proceedings and the April 2024 trial.

Entry of partial judgment at this stage in the case, with just three months left in discovery, will not serve the interests of judicial efficiency. Rather, it merely guarantees piecemeal review in the Court of Appeals, while Splunk's determination not to seek a stay of its remaining claims eviscerates any efficiencies that the parties, witnesses, or this Court might otherwise enjoy as a result of an early appeal of Splunk's patent claims. Accordingly, Defendants respectfully ask the Court to deny Splunk's motion in its entirety or, if it is inclined to enter partial judgment, that it simultaneously exercise its inherent power to stay further proceedings pending appeal to preserve judicial and party resources.

# ARGUMENT

## I. ENTRY OF PARTIAL FINAL JUDGMENT WOULD NOT SERVE THE INTEREST OF "SOUND JUDICIAL ADMINISTRATION" OR EQUITY

To determine whether entry of judgment under Rule 54(b) is appropriate, courts first ask whether one or more claims have been finally resolved. *Curtiss-Wright Corp. v. Gen Elec. Co.*, 446 U.S. 1, 7 (1980). If so, the Court must then consider whether there is any "just reason for delay" in entering final judgment, taking into account "judicial administrative interests as well as the equities involved." *Id.* at 8. The court acts like a "dispatcher," with it "left to the sound judicial discretion of the district court to determine the appropriate time when each final decision . . . is ready for appeal," exercising its discretion in the interest of "sound judicial administration." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956); *see also Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003) ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.") (citation omitted). The consideration of judicial administration is important to "assure that application of [Rule 54(b)] effectively preserves the historic federal policy against piecemeal appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8 (citation omitted).

Where the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored. *Ortho-McNeil Pharm., Inc. v. Kali Labs., Inc.*, No. CIV A 02-5707 DMC, 2007 WL 1814080, at *3 (D.N.J. June 20, 2007); *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, No. CV 17-7105 KM CLW, 2020 WL 4932547, *11-13 (D.N.J. Aug. 24, 2020) (denying entry of partial judgment where parties were identical and "the legal and factual issues, while not wholly identical, are intertwined and related."). "[C]laims certified for appeal do not need to be separate and independent from the remaining claims, so long as resolving the claims would *streamline the ensuing litigation*." *Noel v. Hall,* 568 F.3d 743, 747 (9th Cir. 2009) (emphasis added); *Hildes v. Andersen*, No. 08-CV-0008-BEN RBB, 2010 WL 4658742, at *1 (S.D. Cal. Nov. 8, 2010).

The party seeking entry of partial judgment bears the burden of demonstrating that the case warrants this relief. Fed. R. Civ. Proc. 54(b); *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d

1331, 1335 (4th Cir. 1993), *cited with approval in, e.g., Abbit v. ING USA Annuity*, No. CV-3:13-02310-GPC-WVG, 2017 WL 449149, at *4 (S.D. Cal. Feb. 2, 2017); *U.S. Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.*, No. 1:07-CV-00718, 2009 WL 650578, *2 (E.D. Cal. Mar. 12, 2009). "Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Curtiss-Wright Corp.*, 446 U.S. at 10; *see also Wood v. GCC Bend*, 422 F.3d 873, 878, 879 (9th Cir. 2005) ("Granting a Rule 54(b) motion is not routine, nor should it become so.").

Although the finality of the Court's decisions adjudicating Splunk's patent claims is not in dispute, both efficiency and the equitable considerations provide just cause for the brief delay required to bring all appellate issues in this case efficiently to the Court of Appeals in a single appeal.

### A. Entry of Partial Final Judgment of Splunk's Patent Claims Just Months Before Trial Would Be an Inefficient Use of Judicial and Party Resources

Splunk's motion should be denied because it all but guarantees piecemeal appellate review while achieving no efficiencies for the Court or the parties, in light of the April 2024 trial date and Splunk's position that its remaining claims should not be stayed pending appellate review of its patent claims. *See* Section II, *infra*.

First, partial final judgment promotes piecemeal litigation that does not favor judicial efficiency. *W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs.*, 975 F.2d 858, 861 (Fed. Cir. 1992) ("Appellate courts have historically disfavored piecemeal litigation"). Splunk attempts to minimize this concern by falsely equating the *potential* of multiple trials in any case with the *guarantee* of multiple appeals in this case. Mot. at 8. The prospect of multiple trials is a mere possibility that depends on some or all of the Court's decision being reversed by the Court of Appeals, whereas multiple overlapping appeals are essentially guaranteed if the Court grants Splunk's motion. (Given the nature of the claims and alleged stakes in this case, it is highly probable that one or more parties will appeal from any judgment on Splunk's remaining claims.) By denying Splunk's motion, the Court allows the parties to proceed to summary judgment and/or trial, take all appellate issues to the Court of Appeals in a single proceeding, and—in the hypothetical event of a

reversal on one or more issues—proceed to a single retrial. Entry of partial judgment ensures two overlapping appellate proceedings[1] and an equal or greater number of trials and retrials in this Court.

Splunk further dismisses the concerns piecemeal appellate review poses in this case by arguing that "to the extent that Defendants take issue with being required to brief and argue" the appeal of Splunk's patent claims at the same time the remainder of Splunk's claims proceed in this Court, "Defendants merely state a consequence of every grant of final judgment under Rule 54(b)." Mot. at 8. Contrary to Splunk's position, however, courts have stated that this hardship *is* an important issue when considering motions pursuant to Rule 54(b) and, in large part, is precisely the reason why partial final judgments are the exception and not the rule. *See Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by *pressing needs* of the litigants for an early and separate judgment as to some claims or parties.") (emphasis added). Mid-litigation appeals remain an extraordinary request, especially where the claims to be appealed share significant similarities to the remaining claims, as they do in this case with respect to the parties, the software, the witnesses, and other relevant evidence. Splunk does not event attempt to contend that entry of partial final judgment on its patent claims benefits judicial efficiency (nor could it credibly do so), and its reference to a spurious "cloud" hanging over its invalidated patents does not constitute a pressing need that justifies multiplying the proceedings in view of the approaching trial date and the likely disposition of all claims in this Court well before Splunk's piecemeal appeal would be resolved in the Court of Appeals.

---

[1] The average time between the docketing of an appeal and a decision from the Federal Circuit is at least one year. *See* "Median Time to Disposition in Cases Terminated After Hearing or Submission," United States Court of Appeals for the Federal Circuit (Sept. 30, 2022), https://cafc.uscourts.gov/wp-content/uploads/reports-stats/disposition-time/MedDispTimeMERITS-Table-FY22.pdf (last accessed Sept. 10, 2023*); see also Maxell, Ltd. v. VIZIO, Inc.*, No. CV 21-6758-GW-DFMX, 2022 WL 2167459, at *2 (C.D. Cal. May 13, 2022) (relying on a previous version of this same table). Accordingly, Splunk's piecemeal appeal of its patent claims would still be pending by the time any aggrieved party appeals from judgment on Splunk's nine remaining claims, presently set for trial in April 2024.

This Court originally dismissed Splunk's patent claims on March 17, 2023, cautioning Splunk that its order "highlighted certain deficiencies, but merely adding sentences [to an Amended Complaint] to address those deficiencies may not justify leave to amend." *Splunk Inc. v. Cribl, Inc.*, No. C 22-07611, 2023 WL 2562875, at *15 (N.D. Cal. Mar. 17, 2023). Splunk nevertheless sought leave to amend to re-plead its patent claims, and the Court denied that motion on June 23, 2023. ECF No. 74. Splunk's unexplained additional two month delay in bringing the present Rule 54(b) motion for partial final judgment also weighs in favor of denial. When the party seeking to appeal takes too much time to request a Rule 54(b) judgment, its delay undermines the function of a partial final judgment. *DaSilva v. Indiana*, 30 F.4th 671, 673 (7th Cir. 2022). Here, Splunk waited **seventy days** after the court's denial of Splunk's motion to amend its complaint to file its motion for entry of partial judgment, ensuring that the Court of Appeals will entertain two separate appeals just months apart regarding the same intellectual property case. Splunk has provided no compelling reason for preventing the Court of Appeals from reviewing all of the parties' claims in one appeal. Accordingly, the certainty of piecemeal review and wasted judicial resources, combined with the lack of any efficiencies that would be created by an early appeal in this case, weigh heavily against entry of partial judgment.

### B. The Equities Weigh Against Entry of Partial Final Judgment

A party's bare recitation that there is "no just cause for delay" for entry of a partial final judgment is, by itself, insufficient to justify an immediate appeal of less than an entire action; rather, it must be apparent that there is a sound reason to justify a departure from the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment. *See, e.g.*, *iLor, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008). Here, Splunk has provided no such sound reason for departing from that general rule, a rule that promotes judicial efficiency and conserves party resources.[2]

---

[2] Splunk argues that piecemeal appeals and the specter of multiple trials do not prejudice Defendants because "Defendants' are represented by a large firm." Mot. at 8. The proper consideration is not the capacity of the parties' legal counsel but the hardship multiple trials will inevitably place on the *courts'* and the *parties'* resources. *See, e.g.*, *Wood v. GCC Bend, LLC*, 422

To the contrary, Splunk elected to combine patent, copyright, and other claims in an 85-page, 338-paragraph, fourteen-count complaint against Defendants. Defendants moved to narrow the scope of litigation and, in response, the Court dismissed Splunk's five software patent claims on the ground that Splunk's asserted patents are patent ineligible under 35 U.S.C. § 101. Splunk now asks the Court to sacrifice judicial efficiency to the detriment of this Court, the Court of Appeals, and Defendants to permit it an early appeal. Curiously, Splunk attempts to place blame for that inefficiency at Cribl's feet because it moved to dismiss facially ineligible patent infringement claims. *See* Mot. at 7-8 ("To the extent Defendants take issue with separating the patent claims form the non-patent claims and potentially requiring two trials, *that is the consequence of Defendants' early § 101 challenge*—not a result of Splunk's intent to seek immediate appeal of the § 101 issue.") (emphasis added). Splunk is the architect of its lawsuit; Defendants did not choose to be sued and any suggestion Defendants invited any inefficiencies by moving to dismiss legally untenable (and expensive to litigate) patent infringement claims at the pleading stage is meritless.

Rather, the "consequences" of the Court's decision are merely ones that Splunk accepted as risks when it chose to initiate this litigation. *See Maxell, Ltd. v. VIZIO, Inc.*, No. CV 21-6758-GW-DFMX, 2022 WL 2167459, at *3 (C.D. Cal. May 13, 2022) ("[Plaintiff] chose to bring this lawsuit alleging the seven patents at issue and, therefore, accepted the risk that some of these patents may be found to be patent ineligible or invalid."); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 14 C 08053, 2015 WL 12826473, at *3 (N.D. Ill. Nov. 10, 2015) ("It is par for the course that a decision in litigation on a subset of claims puts a 'cloud' on either the plaintiff or the defendant in the case. In corporate litigation, unless the cloud has a bet-the-company influence on a litigant, then that 'cloud' is a business risk that corporations routinely bear when engaging in litigation."). Splunk accepted the risk that its software patents might be challenged and found to be patent-ineligible or

---

F.3d 873, 883 (9th Cir. 2005) (noting "each [piecemeal appeal] takes time and money" and, thus, "[a]bsent a seriously important reason, both the spirit of Rule 1 [of the Federal Rules of Civil Procedure] and the interests of judicial administration counsel against certifying claims or related issues in remaining claims that are based on interlocking facts, in a routine case, that will likely lead to successive appeals").

otherwise invalid (as every patent infringement plaintiff does). *See id.* Splunk's tactical decision does not warrant a departure from the general rule against piecemeal appeals that waste judicial and party resources.

Similarly, Splunk's claim that it must "pursue a prompt appeal to make clear the state of affairs to the industry" because of Cribl's public statements and the resulting "cloud" hanging over it is equally untenable for several reasons:

First, Cribl's public statements that this Court dismissed Splunk's patent infringement claims convey nothing more than matters of public record. For example, Splunk takes issue with Defendants' "talking point" that "Cribl moved to dismiss serious patent claims and the federal judge assigned to the case agreed with [Cribl] and dismissed those claims almost immediately" because the "talking points do not even refer to the possibility of an appeal." *See* Mot. at 2, 7. But Defendants are under no obligation to speculate about what actions Splunk might take in response to an adverse decision, nor has Splunk cited any precedent suggesting Cribl is obligated to educate third parties more generally about the potential for future appeals in litigation. *See Smart Sys. Innovations*, 2015 WL 12826473 at *3 (granting partial judgment but squarely rejecting Splunk's argument here that judgement was warranted to alleviate "cloud," noting that "[n]on-parties to the litigation, whether they are potential other plaintiffs, defendants, or investors, will analyze the district-court decision bearing in mind that it is a trial-level decision."). Cribl's statement is not misleading: it merely describes a pretrial decision, without purporting to describe the universe of possible subsequent litigation outcomes that may follow.[3]

---

[3]  In contrast, Splunk has resorted to making public statements regarding this litigation that ***are*** misleading. For example, Splunk's Chief Executive Officer, Gary Steele, stated during a recent earnings call:

> Although my ability to comment on active litigation is limited, I can tell you that the litigation is very active and the case is scheduled to go to trial in April of 2024. You may recall that this case is about Cribl taking and illegally using our intellectual property. And indeed, Cribl has conceded that it reverse engineered features in Splunk Software. Our case is strong, and we look forward to continuing to prove it.

*See, e.g.*, Declaration of Sara R. Miller, filed concurrently herewith ("Miller Decl."), Ex. 1 at 6. Not only did Splunk omit mention of the dismissal of its patent claims, it claimed Cribl has "conceded"

Second, Splunk should hardly be heard to complain that, after it publicized its suit against Cribl as one against "a business built on the back of Splunk's labor and intellectual property, without license and without regard for ethics, the rights of others, or the law," Miller Decl. Ex. 2 (citing Compl. at 2), Cribl would want to inform interested customers that Splunk's patent claims were dismissed. If the "industry" is watching this lawsuit, it is in part because Splunk drew attention to the suit with its press release.

Finally, even if Splunk deems it necessary to "make clear to the industry" that it is appealing this Court's ruling and that the Federal Circuit could potentially reverse this Court, Splunk does not need to burden the Court of Appeals with multiple proceedings in order to do so. Splunk can simply make more public statements about the case (such as the one it made on August 23, 2023, where, despite its purported concern over this "cloud," it made no mention of its intent to appeal.) Miller Decl. Ex. 1 at 6.

Splunk's reliance on *23andMe Inc. v. Ancestry.com DNA, LLC*, No. 18-CV-02791-EMC, 2018 WL 5793473 (N.D. Cal. Nov. 2, 2018) to argue that that there is a "cloud" over Splunk or its patents that warrants an early appeal is misplaced. *23andMe* concerned a delay of appellate review "for at least a year or more until trial on the remaining counts," No. 18-CV-02791-EMC, ECF No. 54 at 8, in light of the 29-month median time to trial in the Northern District of California. *Id.*, ECF No. 60 at 5. Additionally, in *23andMe*, the case "[did] not have settled pleadings, nor [had] discovery commenced, nor [had] a trial date been assigned." *Id.* ECF No. 54 at 9. Here, the pleadings are joined; the fact discovery cut-off is just three months away; and trial on the remaining counts is set for less than seven months away.

The equities weigh heavily against granting Splunk's motion.

---

reverse engineering when "reverse engineering" is not inherently improper or illegal. Splunk's statement is similar to a claim that a party "conceded" turning right on red without explaining that doing so is entirely legal in the relevant jurisdiction.

## II. IN THE EVENT THE COURT ENTERS PARTIAL FINAL JUDGMENT, IT SHOULD ALSO STAY THE REMAINDER OF THE CASE PENDING APPEAL

Although Splunk's motion for partial final judgment should be denied for the reasons set forth above, in the event the Court is inclined to grant it, it should also stay the remainder of the case pending the outcome of Splunk's intermediate appeal in order for *any* efficiencies to be achieved, to minimize prejudice to the parties, and for judicial economy. The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see In re: e.Digital Cases*, No. 12CV2698-DMS (WVG), 2014 WL 12516012, at *5 (S.D. Cal. Jan. 7, 2014). In considering whether to issue a stay, courts consider the following factors: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity a party may suffer if required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

*First*, a stay would not harm either party. Although Splunk opposes a stay, it has articulated no basis for its opposition. Miller Decl. Ex. 3. Moreover, nothing about Splunk's conduct of this case has suggested that time is of the essence in resolving its claims. Among other things: (i) Splunk waited *four* years to sue over Cribl's implementation of the S2S protocol after having knowledge that Cribl was developing this functionality, *see, e.g.*, ECF No. 60 at 4:13-17; (ii) Splunk waited nearly a year to file suit after terminating Cribl from its partner program, *compare* ECF No. 1-4 (Nov. 2, 2021 TAP termination letter) *with* Miller Decl. Ex 1 (Oct. 5, 2022 Splunk press release describing first filing in the District of Delaware); (iii) Splunk has never sought a preliminary injunction; and (iv) even as to this motion, Splunk waited *seventy days* to file it. Indeed, it is *Defendants*, who prefer to proceed to trial promptly in order to resolve the remaining baseless allegations hanging over them as a result of this lawsuit, who would disfavor delay, but not at the needless expense of litigating this case inefficiently .

***Second***, a stay would alleviate some of the "hardship or inequity [Cribl] may suffer in being required to go forward" while Splunk's patent claims are on appeal. *CMAX, Inc.*, 300 F.2d at 268. Specifically, staying Splunk's remaining claims would prevent Defendants from having to divide their attention and comparatively fewer resources between briefing and arguing the dismissal of Splunk's patent claims against Cribl in the Court of Appeals and defending both Defendants against Splunk's remaining claims in the run-up to a rapidly approaching April 2024 trial date.

***Third***, a stay would serve the orderly course of justice. *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). Here, the only efficiencies to be obtained from piecemeal appellate review require staying the remainder of Splunk's claims pending the Court of Appeals' decision. Splunk's claims—including its patent claims, copyright claims, and tort and unfair competition claims—concern the *same* parties, the *same* actions, the *same* software products, similar witnesses, and similar documentary evidence (*i.e.*, Splunk Enterprise—including its "S2S" communication protocol—and Cribl's Stream and Edge products and the customers who implement Stream).[4] Accordingly, there can be no reasonable dispute that discovery and trial testimony related to Splunk's patent claims (should the Court of Appeals reinstate them) will overlap substantially with the discovery and trial testimony related to Splunk's remaining claims. At minimum, Splunk will want discovery as to its patent claims and its now pending claims from Cribl's co-founders (Clint Sharp, Ledion Bitincka, and Dritan Bitincka), other former employees of Splunk subsequently employed by Cribl,[5] and even Cribl's investors.[6]

---

[4] Indeed, Splunk's Complaint intertwines its intellectual property allegations by alleging that its patents complement the copyright protection of Splunk Enterprise by protecting the functional aspects of the software, which are not copyrightable. *See, e.g.*, Compl. ¶¶ 88-118.

[5] *See, e.g.*, Compl. ¶ 92 (alleging that "[a]t least 18 of Cribl's employees" directly participated in Splunk's patent program as inventors); *id.* ¶ 93 (alleging that "[a]ll Cribl employees who formerly worked for Splunk" are "well aware of Splunk's extensive patent portfolio and the correspondence of the portfolio to Splunk's products and technologies").

[6] Splunk has also served document and deposition subpoenas on Cribl's investors. These subpoenas are improper, vastly overbroad, and serve little apparent purpose other than to harass.

The same holds true for expert reports, depositions, and trial testimony. There is substantial overlap in the technical experts the parties have retained to opine on Splunk's pending copyright claims and the other issues that would need to be litigated in the event the Court of Appeals reinstated Splunk's patent claims. Specifically, both sets of claims require source code review and relevant technical expertise. Similarly, the parties' damages experts for Splunk's pending copyright claims and any reinstated patent claims are likely to be the same, requiring multiple reports, depositions, and potential trial testimonies of these experts in the event the Court of Appeals reverses this Court's decisions. Splunk has presented no compelling reason to splinter this litigation and put it on multiple tracks, which is the inevitable result of entering partial final judgment with no corresponding stay.

Accordingly, although piecemeal appeals serve no salutary purpose in this case and Defendants would prefer to proceed efficiently to summary judgment and trial, if the Court is inclined to enter partial final judgment as to Splunk's patent claims, a stay of the pending claims is the best and only way to preserve judicial and party resources.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Splunk's motion for entry of partial final judgment. In the event the Court enters judgment on Splunk's patent infringement claims, Defendants respectfully request that the Court stay the litigation of the parties' remaining pending claims to minimize the litigation inefficiencies and drain on party resources that will result from piecemeal appeal.

---

Their scope—seeking, for example, documents and testimony regarding Cribl's investors knowledge of the allegations and issues related to this case, *see, e.g.*, Miller Decl. Exs. 4 & ¶ 5, however, confirms that Splunk may well seek second depositions and additional rounds of document productions regarding knowledge of Splunk's patent-related allegations from these unrelated third parties if Splunk's patent claims are reinstated following an appeal (absent a stay).

DATED: September 15, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Tigran Guledjian*
Tigran Guledjian
*Attorneys for Defendants Cribl, Inc. and Clint Sharp*