UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SPLUNK INC.,

        Plaintiff,

  v.

CRIBL, INC.,

        Defendant.

No. C 22-07611 WHA

**ORDER RE REMAINING CLAIMS AND DEFENSES, AND INJUNCTIVE RELIEF**

This order addresses the claims and affirmative defenses preserved by the parties and tried to the bench, as well as plaintiff Splunk Inc.'s motion for a permanent injunction (Dkt. Nos. 346–48).

**1.**     **AFFIRMATIVE DEFENSES.**

Starting with the affirmative defenses, defendant Cribl, Inc. seeks judgment in its favor on account of equitable estoppel, unclean hands, and copyright misuse.

*First*, the elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the conduct is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct to its injury. *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citation omitted). At a minimum, Cribl has not met its burden of proving, by clear and

convincing evidence, that it was ignorant of the true facts.  For example, Cribl has not met its burden of proving, by clear and convincing evidence, that it believed Splunk approved of uses of Splunk Enterprise that were permitted under the TAP contract but not under the SGT contract, which governed once the TAP contract was terminated for cause in November 2021.  Cribl made no meaningful attempt to justify the argument it understood Splunk's position to be that Cribl would retain all rights it merely licensed under the TAP contract once the TAP contract was terminated.  If that had been the case, why would Splunk have terminated the TAP contract to begin with?  Meanwhile, Cribl has not met its burden of proving, by clear and convincing evidence, that it ever believed Splunk approved of its reverse engineering.  Indeed, there is ample evidence in the trial record to support the proposition that Cribl understood Splunk did not (or would not) approve, so Cribl did not seek to "rock the boat."

*Second*, unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876–77 (9th Cir. 2000).  "Bad intent is the essence of the defense of unclean hands." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).  Cribl's argument that it was terminated from the TAP program in bad faith was submitted to and rejected by the jury.  Although the judge found Cribl's argument that the TAP contract was improperly terminated because Cribl did not "become" a competitor colorable, the jury did not agree based on its response to Special Interrogatory A (Dkt. No. 327 at 3).  In light of that, this order cannot reasonably find that Cribl has proven, by clear and convincing evidence, that it was terminated from the TAP program in bad faith.  Nor can this order reasonably find that Cribl has proven, by clear and convincing evidence, that Splunk induced infringement and breach on account of improper termination, as Cribl now argues, seeing that the jury rejected Cribl's argument that the termination was improper to begin with.

*Third*, as for copyright misuse, our court of appeals has recognized that it "forbids a copyright holder from 'secur[ing] an exclusive right or limited monopoly not granted by the Copyright Office.'" *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)

2

(quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977–79 (4th Cir. 1990)). It thereby "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Ibid.* True, our court of appeals has held that copyright misuse is a "defense to copyright infringement" and "not a defense to [] state law claims." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). But Splunk is incorrect when it suggests this means copyright misuse cannot be used to bar enforcement of language in a licensing agreement that facilitates the misuse at issue. Indeed, "most of the cases that recognize the affirmative defense of copyright misuse involve unduly restrictive licensing schemes." *A & M Records*, 239 F.3d at 1027 n.8. Incorporating unduly restrictive language into a licensing agreement is how copyright holders generally secure an exclusive right or limited monopoly not granted by the Copyright Office. *Altera* stands for the straightforward proposition that "it makes little sense to allow [a party] to proceed on an independent claim for copyright misuse when there has been no allegation of copyright infringement." 424 F.3d at 1090.

Cribl appears to invite this district court to broadly enter judgment in its favor under the doctrine of copyright misuse. That cannot be right. Note the verdict is ambiguous concerning the extent to which the jury found Cribl liable for breaching the SGT contract. On the one hand, it might have found that several uses of the Splunk Enterprise copyrighted software by Cribl violated the "internal business purposes" use restriction in Section 9(c) and monitoring for competitive purposes use restriction in Section 9(e). On the other hand, it might have found that only the marketing uses did so. In any event, it cannot be said that Cribl has established that it should get off scot-free because some (but not all) of its uses of Splunk Enterprise were fair uses, notwithstanding all language in the SGT contract.

A narrower case could have been made that copyright misuse bars enforcement of language in that licensing agreement to the extent it would prohibit fair use. No court of appeals has yet to extend copyright misuse to language that prohibits fair use specifically, though some have come close. *See, e.g.*, *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003) (Judge Richard Allan Posner) (observing that restricting

3

access to one's uncopyrighted data within a copyrighted computer program by contract might constitute copyright misuse). Recognizing that Cribl did not advance the argument, however, and that any appeal will be to the Federal Circuit tasked with applying Ninth Circuit law on the issue, this would be an inappropriate vehicle to seek the Ninth Circuit's opinion on it. What's more, seeing that the injunction granted herein, as tailored, will afford Cribl the relief it could have attained by way of copyright misuse, it is also immaterial.

### 2. SECTION 17200 CLAIM AND COUNTERCLAIM.

Next, we turn to Splunk's claim and Cribl's counterclaim under Section 17200 of the California Business and Professions Code.

Starting with Splunk's Section 17200 claim, at this late stage in the litigation, Splunk sought to premise a violation only on Cribl's breach of the SGT contract. Specifically, Splunk argued that Cribl violated the unlawful and unfair prongs of Section 17200. With respect to the unlawful prong, our court of appeals has held that breaches of contract alone are insufficient to state a claim for unlawful violation of Section 17200. *See, e.g.*, *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1043–44 (9th Cir. 2010). Splunk averred that systematic breaches of contract are sufficient, but the decisions it cited are distinguishable. As a concession to the shortness of life, this order directs the reader to the reasons provided in Cribl's brief (Cribl Section 17200 Opp. 2–7).

Turning to the unfair prong, as Cribl recognizes, Splunk's motion is replete with decisions applying the traditional balancing test for claims brought by consumers. But "[t]he California Supreme Court has rejected the traditional balancing test for [Section 17200] claims between business competitors and instead requires that claims under the unfair prong be 'tethered to some legislatively declared policy.'" *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (Judge Lucy H. Koh) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999)). "In competitor cases, a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Drum v. San Fernando*

*Valley Bar Assn.*, 182 Cal. App. 4th 247, 254 (Cal. Ct. App. 2010) (quoting *Cel-Tech*, 973 P.2d at 544). Here, however, Splunk has not sufficiently pleaded any incipient violation of antitrust law, or violation of the policy or spirit of antitrust law, let alone any threat or harm to competition, beyond mere generalizations. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136–37 (9th Cir. 2014). Rather, it has focused on harm to itself, a competitor (and an incumbent). This is inadequate to state a claim for unfair violation of Section 17200.

As for Cribl's Section 17200 counterclaim, Cribl seeks to premise an unfair violation on copyright misuse. This order finds a Section 17200 claim can be premised on copyright misuse where that copyright misuse violates the policy or spirit of antitrust law. *See Apple Inc. v. Psystar Corp.*, No. C 08-03251 WHA, 2009 WL 303046, at *5 (N.D. Cal. Feb. 6, 2009). In light of the issues raised above, however, and seeing that the tailored injunction granted herein has the effect of affording Cribl the relief that Cribl could have attained under the counterclaim, this order does not address it further.

Before turning to injunctive relief, this order observes that Cribl has recently sought to broadly recast its affirmative defenses and counterclaim based on the judge's recent decision in another matter in which a party asserted a copyright preemption defense (*see, e.g.*, Cribl Supp. Br. 1 (quoting *X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 2113859, at *13 (N.D. Cal. May 9, 2024)). This is too little too late. "Cribl, mindful of the Court's request that [it] be selective in choosing which of its equitable defenses and counterclaims to pursue with the Court, [] narrowed its requests for determination" (Cribl Br. 1). In doing so, it deliberately "preserve[d] and assert[ed] its copyright preemption defense . . . to the extent it applie[d] to Splunk's pending claim of violation of California's [Section 17200]" (Cribl Br. 21). This order declines to allow Cribl to strategically pivot and try again after the fact. That said, it observes that Cribl's general concerns will be addressed in the injunctive relief analysis below.

    **3.**    **INJUNCTIVE RELIEF.**

Finally, this order takes up Splunk's motion for a permanent injunction, premised on the jury's findings of copyright infringement and breach of the SGT contract (not Splunk's failed

5

1    Section 17200 claim). The question that remains to be decided is whether injunctive relief is

2    appropriate and, if so, the scope of that injunctive relief.

3       As for the standard,

>    Under the Copyright Act . . . a court is authorized to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain" further infringement of a copyright . . . . Such relief, however, does not automatically issue upon a finding of liability. Rather, a plaintiff must show entitlement to a permanent injunction by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Under California law, the same four-factor analysis has been used to enjoin breaches of contract where remedies at law were inadequate. *See, e.g.*, *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 533 F. Supp. 3d 802, 811 (N.D. Cal. 2021) (Judge William H. Orrick), *aff'd*, No. 21-15953, 2022 WL 3572943 (9th Cir. Aug. 19, 2022). This order evaluates injunctive relief for both copyright infringement and breach of the SGT contract using the *eBay* factors.

At the outset, it bears emphasis that Section 9(a) of the SGT contract prohibited "reverse engineering (except to the extent specifically permitted by statutory law)," as explained in the final charge for the second phase of argument and deliberations (Dkt. No. 317 at 6–7). And, as explained in the companion memorandum opinion on fair use, Section 107 of the Copyright Act allowed copying and uses of the Splunk Enterprise copyrighted software for the purpose of reverse engineering the S2S protocol. It also allowed copying and uses of the Splunk Enterprise copyrighted software for the purposes of testing and troubleshooting Cribl Stream for interoperating with the Splunk Enterprise copyrighted software.

One question teed up by the briefing of the motion for a permanent injunction is whether the SGT contract's use restrictions governing "internal business purposes" (in Section 9(c)) and monitoring for competitive purposes (in Section 9(e)) could override and disallow those statutory fair uses, as Splunk argued in its motion and at the hearing. As a matter of contract

6

interpretation, this order finds they cannot. Why go through the trouble of spelling out how the SGT contract preserved the extent to which statutory law protects reverse engineering if such restrictions could override and disallow this anyways? Meanwhile, copying and using Splunk Enterprise to reverse engineer the S2S protocol, as required to viably interoperate Cribl Stream with Splunk Enterprise, accomplishes nothing if Cribl cannot copy and use Splunk Enterprise to test and troubleshoot Cribl Stream for maintaining the interoperability. Such ambiguity in the SGT contract will be resolved against the drafter, Splunk, so as to ultimately allow all statutory fair uses of Splunk Enterprise. Keep in mind, however, that copying and using Splunk Enterprise to market Cribl Stream was not and is not a statutory fair use.

The verdict is ambiguous concerning the extent to which the jury found Cribl liable for infringing Splunk's copyright. And, as already mentioned, it is all the more ambiguous concerning the extent to which the jury found Cribl liable for breaching the SGT contract. On the one hand, it might have found that several uses of Splunk Enterprise by Cribl violated the "internal business purposes" and monitoring for competitive purposes use restrictions. On the other hand, it might have found that only the marketing uses did so. Assuming, *arguendo*, the broadest possible finding of liability (contrary to the interpretation above), this order holds that an injunction is warranted but the balance of the hardships as well as the public interest militate against the broadest possible injunction.

With respect to irreparable injury, this order credits Splunk's observation that "[p]ermitting Cribl to continue operating as if it possessed a TAP license, and to indefinitely flout the scope of the SGT and Sections 9(c) and 9(e) in particular, would render both Splunk's TAP program and the SGT pointless" (Splunk Injunction Br. 13–14). Just because certain uses of the Splunk Enterprise copyrighted software are fair uses under the Copyright Act does not mean that Splunk must relinquish all control of its copyrighted software, as Cribl appears to suggest. Likewise, with respect to inadequate remedies at law, this order credits Splunk's observation that no monetary remedy can restore Splunk's ability to administer its own licensing program, which is basically essential to being a contemporary software company

7

(Splunk Injunction Br. 16). As such, the first two *eBay* factors strongly favor an injunction. But the remaining two *eBay* factors strongly favor a narrower one.

With respect to the balance of the hardships, a consideration that weighs heavily against Splunk is the whole history of its TAP "partnership" program and how that program led Cribl, as a "partner," to invest many millions in developing its product that extended the features and functionality of Splunk Enterprise only for Splunk to then pull the rug out from under it. After all, the jury found that Splunk terminated Cribl's TAP membership not on account of breaches of confidentiality obligations and misappropriation, as Splunk had argued, but rather on account of competition, according to Special Interrogatories A and B (Dkt. No. 327 at 3). Originally, Splunk welcomed Cribl as a TAP partner specifically to develop a complementary product like Cribl Stream, and the TAP contract expressly acknowledged that the parties could cooperate to develop complementary products that were "competitive," *i.e.*, to engage in "coopetition." So, Cribl built its product and operated as a TAP partner from October 2018 to November 2021.

During the last fifteen months of that partnership period, however, Splunk's internal documents showed that Splunk was planning to terminate Cribl as a partner as soon as Splunk could improve its own inferior product (DSP) that it was developing to compete with Cribl Stream, which it finally did (after releasing Ingest Actions) in November 2021. Throughout that time, Cribl continued to invest in Cribl Stream, unaware of Splunk's termination plan. In other words, this was not a case of a copyright pirate selling knockoffs. This was a case of a "partner" being invited in by a copyright owner to use the copyrighted work, and to invest millions in designing and developing a complementary product, only to be terminated after all that effort was made. There is a large equity point on the scale favoring the terminated partner, Cribl. The sweeping injunction sought by Splunk could easily put Cribl out of business.

With respect to the public interest, Cribl Stream has been favorably received by customers. Dr. Chris Mattman, a witness who worked at the NASA Jet Propulsion Laboratory, which is a customer of both Splunk and Cribl, praised its performance on the stand. The trial record demonstrated that Cribl Stream could save Splunk customers money by redirecting junk

data to make room in Splunk Enterprise for useful data, a win for customers (and often Splunk too). In addition, the jury found Cribl Stream's S2S capability reflected a "transformative use" of Splunk Enterprise that benefited the public. A sweeping injunction would disserve the public by preventing Cribl from continuing to viably interoperate with Splunk Enterprise moving forward. Customers will need updates to account for changes made to Splunk Enterprise and the S2S protocol. This, too, weighs against a sweeping injunction.

In evaluation of the *eBay* factors and, in particular, the balance of the hardships and the public interest — all arising out of the course of dealing and history of Splunk and Cribl, the "partnership" program, and this court case — this order finds that the appropriate course is to allow Cribl to continue using the Splunk Enterprise copyrighted software for all fair uses under the Copyright Act but to enjoin Cribl from other uses, including uses for marketing purposes. The parties shall meet and confer to provide terms outlining a mechanism for enforcement of this injunction, which may include depositions and site visits, by **JUNE 4, 2024, AT NOON**. The parties shall also jointly file a proposed judgment that covers all issues addressed in this action at that time.

**IT IS SO ORDERED.**

Dated: May 24, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE